Howard M. ROSENSTEIN,
Plaintiff–Appellee,

v.

The CITY OF DALLAS, TEXAS, and
Donald Milliken,
Defendants–Appellants.

No. 87–1888.

United States Court of Appeals,
Fifth Circuit.

May 14, 1990.

Sam A. Lindsay, Chandra V. Fripp, Asst. City Attys., Dallas, Tex., for defendant-appellant.

Bruce A. Pauley, Lyon & Lyon, Rowlett, Tex., for plaintiff-appellee.

Before CLARK Chief Judge, GOLDBERG, GEE, REAVLEY, POLITZ, KING, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH and DUHÉ, Circuit Judges.

PER CURIAM:

The en banc court reinstates the opinion of the panel majority (876 F.2d 392) with the following exceptions: footnote 2 and the writing and footnotes under "Damages." The only objection made by any appellant to the damage award, or to the form of submission of the damages to the jury, was to the punitive damages awarded against Donald Milliken. Other errors, if any, in the submission and award of damages, have been waived. *See Galtieri v. Wainwright*, 582 F.2d 348, 352 n. 8 (5th Cir.1978); *Farrar v. Cain*, 756 F.2d 1148, 1150 (5th Cir.1985).

The judgment against Donald Milliken is reversed and the claim against him is dismissed. The district court's judgment against the City of Dallas is in all respects affirmed.

REVERSED IN PART, AFFIRMED IN PART.

---

JERRY E. SMITH, Circuit Judge, with whom CHARLES CLARK, Chief Judge, GEE, GARWOOD, and EDITH H. JONES, Circuit Judges, join, dissenting:

The majority fundamentally errs in asserting that plaintiff Howard Rosenstein requested a name-clearing hearing following notice of his termination. The record is wholly devoid of anything that would have put the City of Dallas on notice that Rosenstein was seeking anything more than an appeal for the purpose of overturning his termination. As the principle of fair notice runs throughout our jurisprudence, it is surprising that the majority would treat the concept of notice so casually in the instant context.

It is axiomatic that a terminated public employee must affirmatively request a name-clearing hearing in order to be entitled to one. Most recently, for example, in *Rathjen v. City of Houston*, 878 F.2d 836, 840 (5th Cir.1989), this court observed that *"Perry v. Sinderman [n]*, 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570, 580 (1972) holds only that an employee is entitled to a hearing if he requests one...." Similarly, in *Campos v. Guillot*, 743 F.2d 1123, 1126 (5th Cir.1984), we noted that "a discharged public employee is entitled to a 'name-clearing' hearing ... when he requests such a hearing." The panel opinion that the majority substantially adopts indeed recognizes that a name-clearing hearing must be requested. *Rosenstein v. City of Dallas*, 876 F.2d 392, 396

**62**

(5th Cir.1989) (citing *Campos*, 743 F.2d at 1126).

The majority gives scant attention to this issue, however. It concludes, incorrectly, that the request for an appeal of the decision to dismiss is always tantamount to a request for a name-clearing hearing.[1] No authority is cited for this bold proposition, which is undermined by the majority's own legal analysis and supported only by its *ipse dixit*.

Early in its opinion, the majority correctly and carefully explains that an appeal of a dismissal, on the one hand, and a name-clearing hearing, on the other hand, are clean different things: "[T]he process due such an individual is merely a hearing providing a public forum or opportunity to clear one's name, not actual review of the decision to discharge the employee." 876 F.2d at 395 (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 n. 12, 92 S.Ct. 2701, 2707 n. 12, 33 L.Ed.2d 548 (1972)). Rosenstein requested only that the decision to dismiss him be reviewed; he never hinted that he desired a name-clearing hearing, as well.

An appeal is an adversarial proceeding resulting in a decision to uphold or reverse disciplinary action. In a name-clearing hearing, on the other hand, the employer need not produce any evidence, as nothing is to be proved or decided; the employee is merely given a public opportunity to present his or her side of the story. The city's written provisions that Rosenstein claims he was trying to invoke are geared toward reconsideration of the disciplinary decision; nothing about them suggests that they are designed to afford a name-clearing opportunity; nor is there any evidence that the city would have refused a name-clearing proceeding if Rosenstein had intimated that he wanted one.

As the majority notes, *id.* at 396, Rosenstein's letter stated, in pertinent part, "I was fired ... for something that I did not do.... I hereby request an appeal from this decision." Rosenstein never even requested a *hearing*, much less intimated that he wanted anything resembling a *name-clearing* hearing.

The issue, of course, is whether the city was on fair notice that Rosenstein made the request that the law requires. His case might be stronger if he had made a more general plea for redress. Instead, he made a specific request for an *appeal*, lending the recipient reasonably to conclude that such relief was being requested to the exclusion of other relief.[2]

At oral argument, Rosenstein's counsel relied in part upon the fact that Rosenstein's letter disputed the charges against

---

1. "An employer's denial of an employee's request to appeal the employer's discharge decision, which rested on guilt of the stigmatizing charge, is a denial of a name-clearing hearing unless the employer specifically notifies the employee of the availability of an alternative procedure, which will provide the employee with a public forum to clear his name before the governing body that discharged him." *Rosenstein*, 876 F.2d at 396.

2. To use a common analogy, Rosenstein specifically requested an apple but is deemed by the majority to have requested an orange. Or perhaps more appropriately, he requested an apple, is deemed to have requested an apple and an orange, and is being given by this court a gold Rolex watch.

  To the contrary, however, the proper construction of Rosenstein's letter calls for the application of the rule *"expressio unius est exclusio alterius"*—i.e., "the expression of one is the exclusion of others." *See, e.g., United States v. Wells Fargo Bank*, 485 U.S. 351, 357, 108 S.Ct. 1179, 1183, 99 L.Ed.2d 368 (1988).

Drawing an inference of an intent to exclude a particular result from the failure to expressly proscribe that result is the essence of the common law maxim 'expressio unius est exclusio alterius,' often applied as an aid in statutory construction. The maxim embodies a sensible insight into the customary manner in which language is used to communicate ideas. Simply stated, '[i]t expresses the learning of common experience that generally when people say one thing they do not mean something else.' 2A C. Sands, *Statutes and Statutory Construction* § 47.24 (4th ed. 1973)....

*Duke v. University of Tex.*, 663 F.2d 522, 526 (5th Cir. Dec.1981) (citations omitted) (quoted in *Quarles v. St. Clair*, 711 F.2d 691, 699 n. 22 (5th Cir.1983)). While Rosenstein's letter is not a statute, the question of whether the city had fair notice should be analyzed in terms of such a customary rule for interpreting the written word.

him. The suggestion is that such statement implied a desire to "clear the air" regarding the stigma of the allegations. To the contrary, however, in the context of public employee law in Texas, Rosenstein's denial of the accusations underscores the fact that only a formal appeal of his dismissal is what was being sought.

In Texas, the general statute providing for appeals by police officers and firefighters from disciplinary actions, in cities with populations of 10,000 or more that have adopted the statutory scheme by referendum,[3] is Tex.Loc.Gov't Code Ann. § 143.010(b) (Vernon 1988).[4] That provision requires that "[t]he appeal must also contain a statement denying the truth of the charge as made...." Significantly, the requirement is jurisdictional. *City of Temple Firemen's & Policemen's Civil Serv. Comm'n v. Bender,* 787 S.W.2d 951 (1990); *City of Plano Firefighters' & Police Officers' Civil Serv. Comm'n v. Maxam,* 685 S.W.2d 125, 127–28 (Tex.App.— Dallas 1985, writ ref'd n.r.e.).

Thus, the denial of the truth of the charges can easily be understood as boilerplate, customarily included in letters of appeal because the general statute requires it. To the same effect, although Rosenstein acknowledges that as a probationary employee he was not entitled to utilize the appeal procedures conferred by the Dallas charter and code, he asserts that he was attempting to invoke those procedures in his "appeal" letter. But those procedures, like the scheme set forth in the state statute, deal only with an officer's attempt to regain his job and say nothing about name-clearing devices. Given the context of police appeals in Dallas and Texas, it is wholly unfair for this court to conclude that Dallas city officials were reasonably on notice that Rosenstein was requesting a name-clearing hearing.

Correctly, the majority observes that "[a] discharged employee need not use the term 'name-clearing hearing.'" 876 F.2d at 396. Remarkably, the majority then cites *Owen v. City of Independence,* 445 U.S. 622, 626–29, 100 S.Ct. 1398, 1402–04, 63 L.Ed.2d 673 (1980), as a case in which the fired employee "demanded only [an] appeal and was refused on the grounds that the city charter provided for no appellate procedure." 876 F.2d at 396. In fact, however, the letter in *Owen* patently requested name-clearing relief and stands in stark contrast to Rosenstein's narrow demand to have his dismissal reversed. The relevant portion of the letter in *Owen* is reproduced in the margin.[5]

Finally, but importantly, the record in this case reveals that Rosenstein testified that he was aware, when he wrote his appeal letter, that he was entitled to a name-clearing hearing. That is not surprising, given that Rosenstein was, at that time, a law school graduate. The fact that he never made a more specific request for a procedure to which he was knowingly entitled should hardly be charged to the city's detriment.

---

**3.** Dallas has not so voted. The point, however, is that the vast majority (approximately 60) Texas cities larger than 10,000 in population regularly utilize the procedure, thus explaining general custom and practice in regard to police officers' appeals in Texas.

**4.** At the time of Rosenstein's termination, this provision was codified as Tex.Rev.Civ.Stat.Ann. art. 1269m, § 17(a).

**5.** The letter in *Owen* stated,

My counsel ... have advised me that even though the City Charter may give you authority to relieve me, they also say you cannot do so without granting me my constitutional rights of due process, which includes a written charge and specifications, together with a right to a public hearing and to be represented by counsel and to cross-examine those who may appear against me.

    ·    ·    ·    ·

In spite of your recent investigation and your public statement given to the public press, your relief and discharge of me without a full public hearing upon written charges will leave in the minds of the public and those who might desire to have my services, a stigma of personal wrongdoing on my part.

Such action by you would be in violation of my civil rights as granted by the Constitution and Congress of the United States and you would be liable in damages to me. Further it would be in violation of the Missouri Administrative Procedure Act.

445 U.S. at 627 n. 4, 100 S.Ct. at 1403 n. 4.

It is uncontroverted that the only cognizable constitutional interest in this case is the liberty interest of an alleged denial of a name-clearing hearing. That is distinct and separate from the property interest in employment, which Rosenstein, as a probationer, concededly did not have. His letter requested only a reversal of his firing and was so specific that a reader reasonably could only have inferred that he was not making the requisite demand for a name-clearing hearing.

The majority, however, has taken the untoward step of announcing the rule that a request for re-employment, a property interest, shall always be deemed a request for a name-clearing hearing, a liberty interest implicating a procedure with a wholly different purpose. Here, the request for an appeal was a nullity, as Rosenstein, a probationary employee, had no right to invoke the city's appeal procedures. *Evans v. City of Dallas*, 861 F.2d 846, 850 (5th Cir.1988) (per curiam). The city officials were justified in ignoring that request as being entirely without legal or practical significance; only by the most bizarre twist of logic could that request be read, in plain English, to connote anything more than it concisely says.

The upshot of the majority opinion is that Rosenstein is rewarded for engaging in an utterly void, useless, and futile act—the attempted taking of an appeal that the law proscribes. Moreover, the majority employs a triple leap of logic: First, Rosenstein is deemed to have requested a name-clearing hearing; second, the city is deemed to have refused his implied request; third, the city is deemed to have a policy or practice of denying name-clearing hearings. Such a policy must be found in order for the city to be liable under 42 U.S.C. § 1983. Yet, absolutely nothing in the record suggests that the city ever—in Rosenstein's case or otherwise—intentionally denied a name-clearing hearing to anyone.

The city did deny Rosenstein's request for reversal, as its probationary provisions patently permitted it to do. Now, in reaching an unexplainable result that suggests unjustified sympathy for a lawyer who knew his rights but failed to pursue them, the majority pronounces that the city, by refusing an appeal that its charter and code forbid, *ipso facto* has violated a constitutional liberty interest by denying a name-clearing hearing that was never requested. This holding undermines our tradition of fair notice before a party can be held accountable and is a misbalancing of the equities, given all of the facts and circumstances of this case. Accordingly, I respectfully dissent.