John STRAHAN, Plaintiff–Appellant,

v.

Richard KIRKLAND; Washoe County, Defendants–Appellees.

No. 01–15493.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 2001.

Filed April 19, 2002.

James Andre Boles, Reno, NV, for the plaintiff-appellant.

Gregory R. Shannon, Deputy District Attorney, Reno, NV, for the defendants-appellees.

Before B. FLETCHER, BOOCHEVER and FISHER, Circuit Judges.

BOOCHEVER, Circuit Judge.

John Strahan, a sergeant in the Washoe County, Nevada Sheriff's Office, was investigated, disciplined, demoted and transferred. He filed a federal lawsuit under 42 U.S.C. § 1983 against Washoe County and its sheriff, Richard Kirkland, claiming that the adverse employment action violated the First Amendment because it was in retaliation for his association with biker enthusiasts in a motorcycle club called "Blind Justice." The district court granted summary judgment for the defendants, and Strahan appeals. We affirm.

## FACTS

Strahan joined the sheriff's department in Washoe County, Nevada in 1985, and was promoted to sergeant in 1989. In January 1998, Lieutenant Douglas Gist of the Office of Personnel Integrity began to collect and relay information about Strahan to Chief Deputy Ray White, based on statements by other employees expressing concerns about Strahan's activities. An anonymous letter dated June 8, 1998, apparently sent to local newspapers by another deputy, complained about a number of incidents in which Strahan's inappropriate conduct was covered up by the department, including "back a few years when [other deputies] were advised that John [Strahan] was hanging out with 'seedy guys' namely 'Hell's Angels' and one that has an illegal (no business license) motorcycle repair shop at his home on Pat Court."

On June 18, 1998, Gist prepared a memorandum detailing information he had gathered about Strahan. He described other sergeants' statements that Strahan had introduced them to John Vallerio, a biker and convicted felon (whose address was Pat Court). Gist also described Strahan's wearing of t-shirts supporting Hell's Angels.

Gist expressed concern that Blind Justice Motorcycle Club, of which Strahan was a founder, leader and member, had joined the Confederation of Clubs of Nevada, which was led by a convicted felon. Blind Justice was a nonprofit corporation in Nevada. The group's website had a link to "Prison Pen Pals" and featured pictures of members, including an undercover narcotics officer who eventually lost his undercover assignment because of the club's posting of the photograph.

Sheriff Richard Kirkland ("Kirkland") met with Gist on June 22, 1998. They discussed the possibility that Strahan was associating with ex-felons, including Vallerio. Rule of Conduct ("General Order") 125.013 prohibited members of the department from knowingly associating with convicted felons, except when performing official duties. A member who had direct contact with an ex-felon was required to submit a written report of his contact to his supervisor, specifying whether he intended to continue to associate with that person. The failure to submit such a report was a neglect of duty and led to discipline.[1]

On the next day, June 23, 1998, Strahan was directed to produce property related to the motorcycle club, including a list of members. The same day, Kirkland removed Gist from the investigation. Kirkland was concerned about Gist's focus on Strahan's involvement with Blind Justice because Strahan's association was "what my training has indicated is protected speech, and that is not—that was not, is not and will not be the direction or focus of investigations that I'm involved in." Kirkland replaced Gist with Michael Haley, who testified that he was sensitive to Strahan's First Amendment rights to attend motorcycle events and associate with other bikers. Haley stated he "was policing [Strahan's] right to associate with ex-felons," and "[o]ur investigation was focused on whether or not people John was associating with, whether they be priests or persons who rode motorcycles, were they ex-felons, and had John asked permission or informed the sheriff's office of his association and received an OK to continue that relationship."

During the investigation, the sheriff's office interviewed over forty people about Strahan. Some of the questions focused

---

1. Strahan does not dispute the constitutionali- ty of this policy.

on Strahan's association with Blind Justice or related activity, such as his wearing of t-shirts expressing support for Hell's Angels. Other questions focused on Blind Justice's membership in the Confederation of Clubs, which provided: "No cops will sit on the Confederation board; No cops at Confederation meetings until we're established."

The investigators also asked about Strahan's association with Jack Vallerio. Strahan was told in 1996 not to associate with Vallerio, but he continued to do so. In May 1997 he reported orally to his supervisor, Lieutenant Jim Musick, that he had seen Vallerio again. Musick told him that if Vallerio had filed papers to have his criminal records expunged and sealed, the association could continue, although Strahan was later told that without a written report and permission, he could not associate with Vallerio whether or not such papers were filed. Strahan continued to associate with Vallerio without reporting his association.

Strahan received a Notice of Disciplinary Action dated December 15, 1998. The notice listed a variety of instances of misconduct and formal violations of the General Orders. For nearly four years, Strahan had operated his motorcycle without a license and in violation of the conditions of his learner's permit. He filed false articles of incorporation for Blind Justice. Without the required written reports, Strahan associated with Vallerio and two other ex-felons through Blind Justice and related activities. All these actions violated the departmental General Orders. The notice concluded that other alleged instances of misconduct were unfounded.

Although there was no formal finding of a violation, the notice reprimanded Strahan for a number of his actions related to his club, its website and the Confederation of Clubs that created an "appearance of impropriety." The notice "seriously question[ed]" Strahan's truthfulness during the investigation, but gave him "a substantial benefit of the doubt" and did not terminate him on that basis.

Kirkland demoted Strahan from sergeant to the nonsupervisory rank of deputy sheriff and reassigned him, due to the formal violations not related to the club and "a pattern of conduct that suggests many deficiencies on your part," including defiance, arrogance, rebelliousness, insubordination, contempt for authority, lack of accountability, refusal to accept personal responsibility, a desire to blame others, inability to remember detail (a necessary skill for testifying in court as a police officer), and a professed ignorance of the law that Strahan was charged with enforcing.

Strahan, who eventually resigned from the department, filed a complaint in federal court a week after he was disciplined. The complaint alleged that Kirkland had violated § 1983 by investigating, disciplining and demoting Strahan in retaliation for his "association with others relating to the ownership and riding of motorcycles [which] was protected associational activity under the first amendment." The district court granted Kirkland's motion for summary judgment. The court concluded that Strahan's association with Blind Justice, standing alone, qualified as an expressive association and deserved First Amendment protection. Nevertheless, Strahan had not shown evidence to support the inference that the protected expression was a substantial factor motivating his demotion and discipline, and even if there were an improper motivation, Kirkland had shown that he would have taken the same disciplinary action in any event. Strahan appeals.

## ANALYSIS

We review de novo the district court's grant of summary judgment. *Weiner v. San Diego County,* 210 F.3d 1025, 1028 (9th Cir.2000). Viewing the evidence in the light most favorable to Strahan, we must determine whether there are any material questions of fact for trial and whether the district court correctly applied the law, without weighing the evidence or determining the truth of the matter. *See Balint v. Carson City,* 180 F.3d 1047, 1050 (9th Cir.1999) (en banc).

A plaintiff alleging an adverse employment action in violation of his First Amendment rights must show that his protected conduct was a "substantial" or "motivating" factor for the employer's action. *Gilbrook v. City of Westminster,* 177 F.3d 839, 853–54 (9th Cir.1999) (as amended) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). The burden then shifts to the employer to demonstrate that it would have acted the same way even in the absence of the protected conduct. *Id.* at 854. Strahan argues that he presented evidence of the department's concern with his affiliation with Blind Justice from which a jury could infer that his association, protected by the First Amendment, was a substantial factor in his demotion and transfer.

Strahan claims that his association with Blind Justice was the foundation and the focus of the investigation. He points to Gist's early concern with his membership in the motorcycle club and to references to Blind Justice in the questions asked by investigators. These questions preceded more specific questions about Strahan's association with ex-felons. Haley, who replaced Gist as head of the investigation, specifically acknowledged First Amendment concerns, stating in one interview that "on our off-duty time, all of us have the freedom to association, the freedom to be involved in reasonable activities that don't bring discredit upon the agency and those kinds of things. That's not a real clear line."

The district court noted that the Notice of Disciplinary Action did not suggest that Strahan's association with Blind Justice, standing alone, was a substantial factor in the decision to demote and transfer him. The court acknowledged "isolated" instances of "inappropriate" questioning during the investigation leading up to the formal discipline but concluded that the interviews focused primarily on Strahan's association with convicted felons. Even viewing the evidence in the light most favorable to Strahan, the court held that he had not produced evidence to support an inference that retaliation for his mere association with a motorcycle club was a substantial factor motivating the disciplinary action.

We agree with the district court. Strahan did produce evidence that Kirkland knew of his association with Blind Justice, but that alone is not enough to defeat a motion for summary judgment. Strahan would also have to show additional evidence, for example, that the adverse employment action (the demotion and transfer) closely followed Kirkland's learning of his association, that Kirkland expressed opposition to his association with the club, or that Kirkland's reasons for the adverse action were pretextual. *See Keyser v. Sacramento City Unified Sch. Dist.,* 265 F.3d 741, 751–52 (9th Cir.2001) (as amended) (for genuine issue of material fact on retaliatory motive, plaintiff must produce more than evidence that employer knew of protected activity); *Schwartzman v. Valenzuela,* 846 F.2d 1209, 1212 (9th Cir.1988) (jury question exists when plaintiff produces evidence that he was warned

not to engage in protected activity and employer only began criticism after protected activity came to light). In this case, there is no such additional evidence. Kirkland knew of Strahan's association long before he disciplined Strahan. Kirkland did not express opposition to Strahan's association with Blind Justice. Indeed, Kirkland was careful to distinguish that association from Strahan's violations of departmental General Orders. Finally, there is no evidence that Kirkland's legitimate reasons for disciplining Strahan were mere pretext. Kirkland warned Gist that Strahan's involvement with Blind Justice could not be the focus of the investigation and removed Gist as the head of the investigation when he concluded that Gist skated too close to focusing on the protected association. Kirkland testified that both he and Gist's replacement, Haley, were sensitive to Strahan's First Amendment right to attend motorcycle events and associate with other bikers through Blind Justice. Thus Kirkland eliminated any possible taint from Gist's involvement in the investigation. Kirkland's concern was clearly focused on Strahan's association with ex-felons and failure to report his contacts.

 Strahan points, however, to evidence that the investigation itself and the first investigator, Gist, were motivated in part by his mere association with Blind Justice, and at least some of the questions asked by investigators strayed into territory protected by the First Amendment. Even if the ultimate decision-maker can establish that the adverse action was not in retaliation for protected conduct, a subordinate with a retaliatory motive can be liable "if an improper motive sets in motion the events that lead to termination that would not otherwise occur .... [A] subordinate cannot use the nonretaliatory motive of a superior as a shield against liability if that superior never would have considered a dismissal but for the subordinate's retaliatory conduct." *Gilbrook*, 177 F.3d at 854–55 (quotations omitted); *see also Prof'l Ass'n of Coll. Educators v. El Paso County Cmty. Coll. Dist.*, 730 F.2d 258, 266 (5th Cir.1984) (college president who recommended discharge in retaliation for First Amendment activity not shielded from liability by proper motive of board that eventually fired plaintiff).

The liability of Kirkland's subordinates such as Gist, however, is not before us, as Kirkland is the only individual named as a defendant.[2] We agree with the district court that Strahan did not meet his burden of demonstrating that his protected association with a motorcycle club was a motivating factor in *Kirkland's* decision to discipline Strahan. *See Gilbrook*, 177 F.3d at 854–55 (jury could find ultimate decisionmaker not liable for retaliation even when named subordinates were properly held liable). Because Kirkland's subordinates have not been named as defendants, we need not speculate whether they would properly have been granted summary judgment under the circumstances of this case. *See id.* ("We express no opinion as to what the result [on subordinates' liability] should be, as a matter of law, if the facts showed that the final decisionmaker made a wholly independent, legitimate decision to discharge the plaintiff, uninfluenced by the retaliatory motives of a sub-

**2.** The district court did not reach the issue of Kirkland's qualified immunity from suit, although the County raised this issue in its answer to the complaint and its motion for summary judgment. We note, however, that Strahan's right not to be disciplined for an association protected by the First Amendment was clearly established before the investigation began in 1996. *See Mt. Healthy*, 429 U.S. at 282–84, 97 S.Ct. 568 (decided in 1977).

ordinate"); *Prof'l Ass'n of Coll. Educators,* 730 F.2d at 266 n. 14 (where damages were awarded against subordinate with improper motive, "this case does not present a situation in which charges were initiated by an illegally motivated person but the authority who made the decision had neither illegal motive nor illegal influence").

We affirm the district court's grant of summary judgment.

AFFIRMED.