# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20440

United States Court of Appeals
Fifth Circuit

**FILED**
June 28, 2018

Lyle W. Cayce
Clerk

DAVID SIMS,

     Plaintiff - Appellant

v.

CITY OF MADISONVILLE; MADISONVILLE POLICE DEPARTMENT;
JEFFERY COVINGTON,

     Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before KING, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:

David Sims, a former officer with the Madisonville Police Department (MPD), sued the City of Madisonville, Texas (the City),[1] and his former supervisor, Sergeant Jeffrey Covington, under 42 U.S.C. § 1983, alleging that he was terminated after reporting acts of misconduct by Covington in violation of his First and Fourteenth Amendment rights. The district court granted summary judgment in favor of the City on the grounds of res judicata, and later granted summary judgment in favor of Covington based on qualified

---

[1] Although Sims initially pleaded allegations against the City and the MPD separately, they are not discrete juridical entities.

No. 16-20440

immunity. Sims appeals those judgments as well as several of the court's preliminary rulings.

**I**

David Sims was a police officer with the MPD from 2004 until 2012, when he was terminated. Prior to his termination, Sims had reported up the chain of command that his supervisor, Sergeant Jeffrey Covington, solicited help from other officers in planting drugs on Covington's wife during a custody battle over their two children. Sims had previously attempted to report Covington's misconduct to Police Chief Claude May in October 2011, but Chief May dismissed the allegations at the time. In June 2012, Sims discovered audio recordings on Covington's computer in which Covington could be heard asking another officer to help him plant the drugs. Sims accessed the recordings a second time, saved the files to a CD, and gave the CD to a Texas Ranger investigating Covington on other matters. In July 2012, Sims, having learned from another officer that Covington was investigating him, searched the network computer and found Covington's investigative file, which contained "notes on Sims, unauthorized GPS tracking data and camera video" pertaining to Sims.

On July 24, Sims overslept and missed an appearance in Municipal Court. The next day, Sims met with Chief May and Covington and was placed on probation for allegedly failing to appear in Municipal Court on several occasions. At that meeting, Sims possessed typed notes rebutting the allegations he found in Covington's investigative file. Covington and Chief May noticed the notes and contacted City Manager Danny Singletary. At some point following that meeting, Chief May and Singletary contacted AgniTEK Technology Solutions to investigate whether Sims had accessed Covington's files without authorization. AgniTEK ultimately concluded that there had been a computer breach and that it originated from Sims's computer. On July

2

27, Sims was called into Chief May's office and terminated for violating the MPD's Computer Use Agreement.  After Sims was terminated, Ranger Stephen Jeter investigated whether Sims accessed confidential files on Covington's computer, and Sims was eventually indicted for computer security breach, a felony under Texas law.  The charges were later dismissed "in the interest of justice."  Covington was ultimately indicted and convicted of charges related to framing his wife, and he voluntarily resigned from the MPD.

On July 14, 2014, Sims sued the City in state court, alleging claims under the Texas Whistleblower Act.  The City filed a plea to the jurisdiction, and the state court granted that plea, dismissing Sims's state court claims with prejudice.  While the state court case was pending, Sims sued the City and Covington in federal court under 42 U.S.C. § 1983, alleging a conspiracy to violate his First and Fourteenth Amendment rights.  The City and Covington moved for summary judgment based on the preclusive effect of the state court's dismissal.  The district court granted the City's motion for summary judgment on res judicata grounds, but denied Covington's motion, concluding that Covington was not a party to the state court action and failed to establish privity.  Covington later brought a second motion for summary judgment on the basis of qualified immunity.  After significant motion practice, the district court granted Covington's motion for summary judgment.  Sims appeals those judgments.

## II

We review a district court's grant of summary judgment de novo.  *Howell v. Town of Ball*, 827 F.3d 515, 521 (5th Cir. 2016).  Summary judgment is appropriate where, construing the evidence in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting FED. R. CIV. P. 56(a)).  A genuine dispute of material

No. 16-20440

fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

## III

We first address the individual liability claims brought against Covington. Sims argues that Covington violated the First Amendment by retaliating against him for engaging in protected speech when he reported Covington's misconduct. He also alleges that Covington violated his clearly established due process rights by depriving him of a property interest in continued employment with the MPD and liberty interests in a name-clearing hearing and in being free from criminal indictment and arrest based on false evidence. Sims also contends that Covington conspired with others to deprive him of these rights.[2]

## A

On the First Amendment retaliation claim, the district court granted summary judgment on the basis of qualified immunity. It cited our recent holding in *Culbertson v. Lykos*, 790 F.3d 608 (5th Cir. 2015), that the law is "unsettled . . . whether someone who is not a final decisionmaker and makes a recommendation that leads to the plaintiff being harmed can be liable for retaliation." *Id.* at 627. Covington did not have the authority to terminate

---

[2] Sims challenges a number of administrative rulings connected to the summary judgment motion including the district court's refusal to strike Covington's declaration, the 200-page limit it imposed on his response to the summary judgment motion, and its rejection of his late request to file a surreply. We find no abuse of discretion in any of these rulings. Sims had ample opportunity to litigate the summary judgment motion, and the district court accommodated Sims in granting a number of extensions of time. Most importantly, Sims does not identify how the challenged aspects of Covington's declaration or the additional summary judgment evidence he wanted to include could overcome any of the primarily legal obstacles to his claims that resulted in the grant of summary judgment.

Sims; Chief May, who was not sued, did.[3]   Unsettled liability for a nondecisionmaker like Covington would entitle him to a qualified immunity defense because public officials are subject to section 1983 liability only if their actions "were objectively unreasonable in light of clearly established law at the time of the violation." *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016).

But we are getting ahead of ourselves.  Qualified immunity is a two-step process.   The first asks whether the defendant violated the plaintiff's constitutional rights.  The second step adds the protection for the defendant that liability attaches only if the right was clearly established.  *Id.*  We now have discretion to skip the first inquiry and resolve a case solely on clearly established grounds.  *Pearson v. Callahan*, 555 U.S. 223, 240 (2009).  Yet in overruling the short-lived regime of *Saucier v. Katz*, 533 U.S. 194, 200 (2001), which required courts to first address the underlying constitutional question, *Pearson* recognized it would still "often [be] advantageous" to follow the two-step order.  555 U.S. at 242.  Doing so is "beneficial" here for reasons the Supreme Court recognized.  *Id.* at 236.  This is the fourth time in three years that an appeal has presented the question whether someone who is not a final decisionmaker can be liable for First Amendment retaliation.  *Pennypacker v. City of Pearl*, 689 F. App'x 332, 332 (5th Cir. 2017) (dismissing retaliation claim because liability for individual defendants was not clearly established); *Howell*, 827 F.3d at 526 (affirming dismissal of retaliation claim on different ground when district court dismissed based on belief "a non-final decision maker may not be held liable for First Amendment retaliation claims brought under

---

[3] Sims contends that Covington had the express authority to discipline and terminate employees and that, in his case, Covington exercised that authority by making "the ultimate decisions and provid[ing] the false grounds and conclusions that caused them."  But under city law and departmental policy, a mid-level Sergeant like Covington may make a disciplinary recommendation, but only the Chief of Police and City Manager have the authority to terminate an employee.

§ 1983"); *Culbertson*, 790 F.3d at 627 (dismissing retaliation claim because liability for individual defendants was not clearly established).  Continuing to resolve the question at the clearly established step means the law will never get established.  *Pearson*, 555 U.S. at 236 ("[T]he *Saucier* Court was certainly correct in noting that the two-step procedure promotes the development of constitutional precedent.").  Addressing the first-step liability question is "especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable."  *Id.*  That is the case here.  First Amendment retaliation claims do not arise in criminal litigation (as, for example, a Fourth Amendment claim often would), and this issue of individual liability would not arise in other civil suits, such as those against a municipality, in which qualified immunity does not apply. Because this is a question unique to section 1983 First Amendment claims brought against individual defendants, we conclude that clarifying the liability question is important to provide guidance to public employees who may find themselves on either side of the "v" in these lawsuits that can raise important issues of whether employees who challenge corrupt governmental practices are protected in exercising First Amendment rights.

In our recent decision resolving this question on "clearly established" grounds, we recognized the tension in our caselaw on whether only final decisionmakers can be individually liable for First Amendment retaliation claims.  *Culbertson*, 790 F.3d at 627.  *Culbertson* noted that our first case to address the issue "required only that a plaintiff show 'an affirmative causal link' between a school principal's recommendation to reassign an athletic director and the school district's decision to do so." *Id.* at 626 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 758 (5th Cir. 1986), *aff'd in part, remanded in part on other grounds,* 491 U.S. 701 (1989)).  "In *Jett*, it did not matter that the individual defendant had no authority to make the actual

transfer decision." *Id.* As our earliest decision addressing this question, *Jett* controls. *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 695 (5th Cir. 2014) (applying the "rule of orderliness" to identify which case among conflicting decisions controlled).

*Jett* also has the virtue of being right. As numerous courts of appeals have recognized, individual liability for a government official who violates constitutional rights, including First Amendment ones, turns on traditional tort principles of "but-for" causation. *See, e.g., Tejada-Batista v. Morales*, 424 F.3d 97, 101–02 (1st Cir. 2005) (Boudin, J.). If an individual defendant's animus against a coworker's exercise of First Amendment rights is a link in the causal chain that leads to a plaintiff's firing, the individual may be liable even if she is not the final decisionmaker. *See, e.g., id.* at 102 (affirming jury verdict against subordinate law enforcement officers whose retaliation led to plaintiff's discharge and joining three other circuits in finding that a "properly motivated" decision-maker does not "insulate[] the ill-motivated subordinate . . . if the [subordinate] is a but-for cause of the firing"); *Maestas v. Segura*, 416 F.3d 1182, 1191 (10th Cir. 2005) ("While Segura made the final decision to transfer Plaintiffs, Pratt, though a subordinate, might be liable if he possessed a retaliatory motive which set in motion the events that ultimately led to Plaintiffs' transfers."); *Strahan v. Kirkland*, 287 F.3d 821, 826 (9th Cir. 2002) ("Even if the ultimate decision-maker can establish that the adverse action was not in retaliation for protected conduct, a subordinate with a retaliatory motive can be liable 'if an improper motive sets in motion the events that lead to termination that would not otherwise occur.'"); *Darnell v. Ford*, 903 F.2d 556, 561–62 (8th Cir. 1990) (affirming jury verdict against defendant, a subordinate Patrol Major who investigated the conduct of and recommended the demotion of a captain, for violating the captain's First Amendment right of association); *Saye v. St. Vrain Valley Sch. Dist.*, 785 F.2d 862, 867 (10th Cir.

No. 16-20440

1986) (holding that retaliatory animus by school principal against plaintiff's protected union activities could be "motivating factor" for plaintiff's dismissal even though "none of the school board members who voted not to renew Saye's employment were aware of her union involvement").

In light of *Jett* and the consensus view of other courts of appeals that individual liability is just a matter of causation, why did uncertainty develop in our circuit on this point? *Beattie v. Madison County School District*, 254 F.3d 595 (5th Cir. 2001), unwittingly planted the seeds of confusion that later sprouted on this issue. A school secretary brought suit alleging she was fired for opposing the superintendent's reelection. *Id.* at 599. Although she first sued not just the school district but also the superintendent and principal in their individual capacity, by the appeal she had abandoned claims against the individuals. *Id.* at 601 n.5. So the focus of the appeal was on the question of municipal liability, which attaches only if final decisionmakers are liable. *Id.* at 602 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). The unconstitutional motives of the principal and superintendent who recommended the termination were not attributed to the school board that made the final decision because the board did not know about the plaintiff's First Amendment activity. *Id.* at 603–04.

Not recognizing that *Beattie* was only confronting *Monell* liability, a later case involving individual defendants read *Beattie* for the principle that "only final decision-makers may be held liable for First Amendment retaliation employment discrimination under § 1983." *Johnson v. Louisiana*, 369 F.3d 826, 831 (5th Cir. 2004). In reversing a verdict against a supervisor who retaliated against a subordinate for complaining about sexual harassment, *Johnson* ignored *Jett*'s contrary and precedential position that an individual is liable for First Amendment retaliation if her unlawful conduct is a link in the causal chain that resulted in the plaintiff's firing. Some cases have followed

8

No. 16-20440

*Johnson*'s categorical view that only final decisionmakers can be liable for First Amendment retaliation. *See, e.g.*, *Huggins v. Holmes*, 2018 WL 343855, at \*7 (W.D. La. Jan. 8, 2018).

Other cases following *Beattie* and *Johnson* have imposed a causation standard that is more stringent than *Jett*'s "but-for" standard for nonfinal decisionmakers. *See, e.g., DePree v. Saunders*, 588 F.3d 282, 288 (5th Cir. 2009); *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 351 (5th Cir. 2006). They have done so because they, like Sims, have mistakenly characterized the question as whether the nondecisionmaker can be liable under a cat's paw theory of imputed liability. That turns cat's paw liability on its head, and is another example of relying on the law of *employer* liability for a question of *employee* liability. As "cat's paw" liability arose under Title VII in which only employers can be liable, it is not about the liability of individual employees. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 415–16 (2011); *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990) (Posner, J.). It is instead about whether the employers who are subject to Title VII liability can be held liable by imputing to those entities the unlawful motives of employees who are not final decisionmakers. *Staub,* 562 U.S. at 418. Unlike Title VII, section 1983 applies to individuals. So the question is not whether the metaphorical paw (the City) is liable for carrying out the ill-motivated actions of the metaphorical cat (Covington); it is whether the cat itself can be liable for having unlawful motives that caused the firing. That individual liability turns on traditional tort principles of whether the particular act was a "causal link" in the termination. *Jett,* 798 F.2d at 758; *Maestas*, 416 F.3d at 1191 (characterizing the question as whether the defendant "set in motion" the termination).

*Beattie, Johnson*, and subsequent cases thus inadvertently created the uncertainty we have recognized in this area. We now provide the overdue clarification. Because it is at odds with our earlier holding in *Jett*, *Johnson*'s

9

absolute bar on First Amendment liability for those who are not final decisionmakers is not binding. Nor are the imputation principles of cat's paw liability applicable to an effort to hold a nondecisionmaker liable. *Jett*'s "causal link" standard sets the causation requirement for a suit against an individual defendant with retaliatory motives who does not make the final employment decision.

Although today's decision clarifying that *Jett* controls means the law will no longer be "unsettled" in this area, *Culbertson*, 790 F.3d at 627, it provides no recourse to Sims. That is because of the second part of the qualified immunity inquiry, which requires a plaintiff to show that any violation of rights was clearly established at the time the conduct occurred.[4] When Sims was terminated in July 2012 the inconsistency in our law on whether First Amendment liability can attach to a public official who did not make the final employment decision had not been resolved. Indeed, three years after that *Culbertson* recognized the tension in affirming a grant of summary judgment on qualified immunity grounds in favor of a defendant who made a recommendation to fire the plaintiff but did not have the authority to make the ultimate decision. *Id.* at 608. If judges have mixed up principles of individual and municipal liability in this area and failed to recognize *Jett* as the controlling decision, law enforcement officials should not be expected to have a more nuanced understanding of section 1983 law. We therefore agree with the district court's holding that Sims's claim is foreclosed by *Culbertson* on immunity grounds.

---

[4] To ultimately establish a First Amendment violation Sims would also have to overcome other issues Covington raises but that the district court did not need to address, such as whether Sims was speaking as part of his official duties or as a citizen. *See Garcetti v. Ceballos*, 547 U.S. 410 (2006). We do not address *Garcetti* because we affirm the grant of summary judgment on the ground the district court relied on: it was not clearly established in 2012 that a non-final decisionmaker could be liable for First Amendment retaliation.

No. 16-20440

## B

Sims next challenges the district court's dismissal of his due process claims against Covington.

## 1

To establish a Fourteenth Amendment procedural due process claim, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in deprivation of that interest." *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001). Sims alleges that Covington violated his property interest in continued employment by not following the procedures set forth in Texas Government Code § 614.023(c) before terminating him.[5] The district court concluded this claim was foreclosed by *Stem v. Gomez*, 813 F.3d 205 (5th Cir. 2016), which held that section 614.023(c) does not create a property interest in continued employment that implicates the Due Process Clause. The court further concluded that "even if Sims could distinguish *Stem*, which he [could not]," the Texas Courts of Appeals were split over whether the state statute creates a property interest; therefore, the property right was not clearly established when Sims was fired in 2012, and Covington was entitled to qualified immunity.

Sims argues that under section 614.023(c) he should not have been terminated for alleged misconduct without notice, an investigation, and a finding of evidence proving the alleged misconduct. In *Stem*, we interpreted section 614.023(c) as a way to "assure[] that an officer against whom a complaint is filed understands the allegations against him and receives a

---

[5] Texas Government Code § 614.023(c) sets out procedures to be followed when a complaint is made against a law enforcement officer: "In addition to [providing the officer with a signed complaint within a reasonable time after the complaint is filed], the officer or employee may not be indefinitely suspended or terminated from employment based on the subject matter of the complaint unless (1) the complaint is investigated; and (2) there is evidence to prove the allegation of misconduct." TEX. GOV'T CODE § 614.023(c).

meaningful investigation into the accuracy of those allegations," but conclusively held that the statute alone does not create a constitutionally-recognized property interest in continued employment.  813 F.3d at 213.  In reaching our decision, we noted that there was no authoritative decision from the Supreme Court of Texas, that there was a split among the state's intermediate courts, and that the legislation was not aimed at abrogating the right to terminate at will.  *Id.*

Sims further asserts that *Stem* does not foreclose his claim because, unlike in that case, the MPD fully incorporated the provisions of section 614.023(c) into its policies.[6]  *Stem* acknowledged that section 614.023(c) can confer a property interest if an employer expressly adopts the statute into its policies.  *Id.* at 211 (citing *Turner v. Perry*, 278 S.W.3d 806, 822 & n.21 (Tex. App. 2009)).  While MPD's policies appear to include parallel processes for investigating a complaint against an officer, they do not "expressly adopt[]" section 614.023(c).  *Turner*, 278 S.W.3d at 822 & n.21.  Accordingly, MPD's policies do not confer a property interest through incorporation.  Thus, we agree that Sims's argument is foreclosed by *Stem*, and we affirm the district court's holding.

**2**

When a person's good name, reputation, honor, or integrity is at stake due to an action by the government, he is entitled to notice and an opportunity to be heard.  *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971).  "A constitutionally protected liberty interest is implicated only if an employee is discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment

---

[6] Sims points to two specific policies.  General Order No. 300-04 "set[s] forth procedures for receiving, investigating, and classifying complaints against employees of the police department."  General Order No. 300-07 "provide[s] guidelines for Internal Investigations."

opportunities." *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981). A deprivation of liberty claim lies against the government employer, not a government employee or official. *Harris v. City of Balch Springs*, 9 F. Supp. 3d 690, 700 (N.D. Tex. 2014) (citing *Rosenstein v. City of Dallas,* 876 F.2d 392, 395 (5th Cir.1989), *aff'd in relevant part,* 901 F.2d 61 (5th Cir.1990) (en banc)).

Sims's claim against Covington is thus barred by qualified immunity because he has failed to cite to any Supreme Court or Fifth Circuit precedent clearly establishing that a mid-level supervisor violates an employee's due process rights when the municipal department he works for does not grant a name-clearing hearing. In other words, Sims has not shown that Covington had the legal authority to grant a name-clearing hearing in the first place, let alone that Covington played a role in depriving him of such a hearing.[7] *See Caleb v. Grier*, 598 F. App'x 227, 239 (5th Cir. 2015) (finding that the plaintiff failed to state a claim where she alleged no facts indicating that the defendants "had any ability, authority, or even influence to deny her access to a name-clearing hearing, much less that they did so."). *See also McDonald v. Wise*, 769 F.3d 1202, 1215–16 (10th Cir. 2014) (citing *Rosenstein,* 876 F.2d at 397) (finding defendant was in no position to provide a name-clearing hearing and was therefore entitled to qualified immunity). Accordingly, we affirm the district court's judgment on this issue.

---

[7] Additionally, we note that this Circuit applies a seven-element "stigma-plus-infringement" test to determine whether § 1983 may provide a remedy for the deprivation of liberty without opportunity to clear one's name. *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006). Of particular relevance, one factor requires that an employee affirmatively request a name-clearing hearing. *Id.*; *see also Rosenstein v. City of Dallas, Tex.*, 901 F.2d 61, 61 (5th Cir. 1990) (en banc). Sims argues that he made his desire to clear his name plain by rebutting each of Covington's reasons for disciplining him. However, as Sims concedes in his briefs on appeal, he did not ask Covington for a hearing, and his argument therefore fails under our stigma-plus-infringement test. *Rosenstein*, 901 F.2d at 61.

**3**

Sims next argues that Covington violated his protected liberty interest "in being free from criminal indictment and arrest based on falsified and fabricated evidence." The district court declined to consider this claim. It concluded that "to the extent Sims's summary judgment response asserts a malicious-prosecution claim and a liberty-deprivation claim against Covington, based on his involvement in Sims's prosecution for 'computer security breach,'" he failed to raise those theories in his first amended complaint and could not do so for the first time on summary judgment.

Sims contends that his first amended complaint adequately pleaded this claim, citing the following language: "Defendant Jeffery Covington is liable for civilly conspiring, while acting under color of law, to retaliate against Plaintiff and/or deprive Plaintiff of constitutionally protected interests without due process of law, and which have caused injuries and resulted in damages to the Plaintiff." We disagree. A properly pleaded complaint must give "fair notice of what the claim is and the grounds upon which it rests." *Ashcroft v. Iqbal,* 556 U.S. 662, 698–99 (2009). The language Sims points to offers no such notice. Because we conclude that Sims failed to raise this claim in his complaint, we affirm. *See Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (a claim that was not raised in the complaint, but is raised only in response to a motion for summary judgment, is not properly before the court).

**C**

The district court concluded that because Sims failed to show a violation of his clearly established constitutional rights, his underlying claim that Covington conspired with others to violate his constitutional rights necessarily failed. That is ordinarily the case. *Mowbray v. Cameron Cty.,* 274 F.3d 269, 279 (5th Cir. 2001). But Sims suggests for the first time on appeal that the "decisionmaker" issue that barred his First Amendment claim against

No. 16-20440

Covington would not be a problem for the conspiracy claim. Presumably the idea is that Covington could have conspired with the final decisionmaker to retaliate. Sims, however, did not present this theory in either his district court pleadings or response to summary judgment. We will not reverse a district court ruling based on a claim not presented to that court. *Celanese Corp. v. Martin K. Eby Const. Co.*, 620 F.3d 529, 531 (5th Cir. 2010). We therefore affirm the grant of summary judgment on the conspiracy claim.

## IV

Lastly, Sims challenges the district court's grant of summary judgment for the City on the grounds of res judicata. Under the Full Faith and Credit Clause of the United States Constitution, "[a] final judgment in one state, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land." *Baker v. General Motors Corp.*, 522 U.S. 222, 223 (1998). "A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Texas's claim preclusion law requires "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Norris v. Hearst Trust*, 500 F.3d 454, 460–61 (5th Cir. 2007) (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)). If all three elements are satisfied, claims that have been finally adjudicated, or claims that arise out of the same occurrence and that could have been litigated, are precluded by res judicata. *Amstadt*, 919 S.W.2d at 652.

Sims initially sued the City in state court under the Texas Whistleblower Act, TEX. GOV'T CODE § 554.001, but the state court dismissed his claim with

prejudice on the basis of governmental immunity.  The district court granted the City's motion for summary judgment, concluding that, pursuant to Texas law, Sims's state court action against the City barred his claims in federal court.  We agree.  We have held that, under Texas law, a grant of a plea to the jurisdiction is a dismissal on the merits for purpose of res judicata.  *Klein v. Walker*, No. 17-40052, 2017 WL 3879795, at *2 (5th Cir. Sept. 5, 2017) (citing *Flores v. Edinburg Consol. Indep. Sch. Dist.,* 741 F.2d 773, 775 n.3 (5th Cir. 1984)).  The first element of Texas's preclusion law is therefore satisfied.  The second element is also satisfied because Sims sued the City in both state court and federal court.

As to the third element, Sims argues that, under Texas law, a decision on the merits by a court of competent jurisdiction does not preclude him from bringing different claims in federal court.  He further argues that he could not have raised his federal claims in state court.  His arguments are unavailing.  Under Texas law, actions may arise out of the same transaction or occurrence depending on "their relatedness in time, space, origin or motivation, and whether, taken together, they form a convenient unit for trial purposes."  *Weaver v. Tex. Capital Bank*, 660 F.3d 900, 907 (5th Cir. 2011) (quoting *Getty Oil Co. v. Ins. Co. of N.A.*, 845 S.W.2d 794, 799 (Tex. 1992)).  Different theories of recovery based on the same operative facts do not generate different causes of action.  *Hogue v. Royse City*, 939 F.2d 1249, 1253–54 (5th Cir. 1991).  Sims originally sued the City in state court, alleging a violation of the Texas Whistleblower Act based on his termination from the MPD.  His state and federal court actions therefore arose out of the same transaction or occurrence—his termination from the MPD—and merely advanced different theories of recovery.  Moreover, Sims could have brought his section 1983 claims in state court, but failed to do so.  *See Home Builders Ass'n Miss. v. City of Madison*, 143 F.3d 1006, 1013 (5th Cir. 1998) ("Federal jurisdiction over §

1983 is concurrent, not exclusive."). Therefore, the third element of Texas's claim preclusion law is satisfied, and we affirm the district court's judgment.

**\*\*\***

For these reasons, we conclude that Covington was entitled to qualified immunity on all properly pleaded claims against him, and that Sims's claims against the City were barred by res judicata. Accordingly, we AFFIRM.