# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 12, 2025

Lyle W. Cayce
Clerk

No. 24-60058

Yolanda Welch Atkins,

*Plaintiff—Appellee*,

*versus*

Patrick Hopkins, *in his individual and official capacity*,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:21-CV-810

Before Smith, Higginson, and Douglas, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

The district court denied qualified immunity ("QI") to Patrick Hopkins, a Macon alderman who, allegedly in retaliation for Yolanda Atkins's having run for mayor, declined to second the motion to reappoint her as a city employee. We reverse and remand.

I.

Atkins began serving as the court clerk for Macon, Mississippi, in 2003. The position requires reappointment by the board of aldermen every four years. In January 2019, the city discovered that about $3,200 in muni-

cipal court fines and fees could not be accounted for. After a state investigation, Atkins was arrested and indicted for embezzlement.

On October 6, 2020, the board of aldermen voted 4-1 to place Atkins on leave. Hopkins, the defendant here, was in the majority. Two days later, Atkins paid the state auditor $4,541, explaining that she wanted "to save her job," and enrolled in a pretrial diversion program. Her embezzlement charges remain pending.

On October 13, 2020, the board of aldermen voted 3-2, Hopkins again in the majority, to reinstate Atkins as court clerk. In January 2021, after the board received Atkins's reimbursement check, Hopkins said he "considered the [embezzlement] situation . . . 'over and done.'"

Atkins then ran for mayor against Hopkins's preferred candidate and lost. After the election, the new board of aldermen, which included Hopkins, met to consider reappointments, including for Atkins's position as court clerk. Alderman Harmon moved to reappoint her. Neither Hopkins nor any other alderman seconded the motion, so her appointment ended.

Atkins sued Hopkins, other aldermen, and the new mayor in their individual and official capacities, raising First Amendment retaliation and other claims not relevant to this appeal. The defendants moved for summary judgment on the First Amendment claims, asserting QI. The district court granted the motion for all defendants except Hopkins.

Denying summary judgment to Hopkins, the court found a genuine dispute of material fact on the final element—whether Hopkins had acted against Atkins because of her protected speech. Though Hopkins had considered the embezzlement issue "over and done" and had supported her reinstatement even after her indictment, he refused to second the motion to reappoint her after she had run for mayor against his preferred candidate. Hopkins offered, and the court acknowledged, a different reason for his

change of heart: He was "getting heat" from constituents for supporting an embezzler. But, the court said, he had failed to produce sufficient evidence for his explanation, as required under *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977).

If a jury resolved that factual dispute in favor of Atkins, the district court reasoned, then Hopkins had clearly violated the First Amendment under *Sims v. City of Madisonville*, 894 F.3d 632 (5th Cir. 2018) (per curiam). The district court accordingly denied summary judgment to Hopkins. He appeals that interlocutory order.

## II.

"[T]he denial of a motion for summary judgment based upon qualified immunity is a collateral order capable of immediate review." *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1982)). But our jurisdiction allows us to review only "the purely legal question whether a given course of conduct would be objectively unreasonable in light of clearly established law"; we may not review whether "a genuine issue of fact exists regarding whether the defendant[] did, in fact, engage in such conduct." *Id.* at 346–47. "[O]ur review" of the legal question "is of course de novo." *Id.* at 349.

## III.

Under the doctrine of QI, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity is a two-step process." *Sims*, 894 F.3d at 638. First, we "ask[] whether the defendant violated the plaintiff's constitutional rights"; then, we ask whether "the right was clearly established." *Id.* We "have discretion to skip

the first inquiry and resolve a case solely on clearly established grounds." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 240 (2009)).

"For a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 285 (5th Cir. 2019) (citation omitted). We must not define clearly established rights "at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 742).

Atkins sued Hopkins for First Amendment retaliation. She claims that Hopkins refused to second the motion to reappoint her as court clerk because she had run for mayor against Hopkins's preferred candidate. A plaintiff seeking to recover for First Amendment retaliation must prove that

> (1) he suffered an adverse employment decision, (2) he spoke as a citizen on a matter of public concern, (3) his interest in the speech outweighs the government's interest in the efficient provision of public services, and (4) the protected speech motivated the adverse employment action.

*Bevill v. Fletcher*, 26 F.4th 270, 276 (5th Cir. 2022). The district court found a genuine dispute of material fact on the fourth element: whether Hopkins had refused to second the motion to reappoint Atkins because of her protected speech. We do not review that conclusion in this interlocutory appeal. *See Kinney*, 367 F.3d at 348.

We address only whether, under *Sims v. City of Madisonville*, Hopkins's conduct—as "deemed sufficiently supported for the purposes of summary judgment"—clearly violated the First Amendment. *See id.* As one alderman on a multi-member board, Hopkins had no power unilaterally to terminate Atkins. *Sims* addressed when such a non-decisionmaker could be

liable for First Amendment retaliation. *Sims*, 894 F.3d at 638–41. According to Hopkins, though, *Sims* did not make clear that he could be liable for his particular conduct of refusing to second the motion to reappoint Atkins.

In *Sims*, we held that a defendant violated the First Amendment by recommending the plaintiff's discipline in retaliation for protected speech. *Id.* at 641. Sims, a subordinate police officer, had reported his supervisor for misconduct. *Id.* at 636. His supervisor, in turn, recommended that the chief of police discipline Sims; the chief then fired Sims. *Id.* at 636–37. Though the supervisor couldn't fire Sims, he could be liable if his "unlawful conduct [was] a link in the causal chain that resulted in" the termination. *Id.* at 640. Nonetheless, the supervisor was entitled to QI because such a violation was not clearly established. *Id.* at 641.

Our conflicting caselaw had cast doubt on whether non-final decision-makers could be liable for unlawful conduct that ultimately results in termination. In *Jett v. Dallas Independent School District*, 798 F.2d 748, 758 (5th Cir. 1986), we held a high school principal liable because his retaliatory *recommendation* had caused the school's athletic director's reassignment. It was irrelevant that the principal "lacked the final authority to reassign" the athletic director. *Id.* But in *Johnson v. Louisiana*, 369 F.3d 826, 831 (5th Cir. 2004), we held the opposite: "[O]nly final decision-makers may be held liable for First Amendment retaliation employment discrimination under § 1983." *Jett*, the earlier case, not *Johnson*, controlled, as we explained in *Sims*, 894 F.3d at 639.

As we later paraphrased in *Bevill v. Fletcher*, 26 F.4th 270, 279 (5th Cir. 2022), *Sims* decided that "someone who is not a final decisionmaker and *makes a recommendation* that leads to the plaintiff's being harmed can be liable for retaliation." (Emphasis added.) That rule was consistent with out-of-circuit cases holding defendants liable for recommending the plaintiff's fir-

ing. *Sims*, 894 F.3d at 639–40 (collecting cases).[1]

Hopkins did not recommend Atkins's removal or suggest that another board member should vote against her. *Contra id.* at 636–37. He did not "set in motion" a disciplinary process that resulted in her termination. *See id.* at 641. As an alderman on a five-member board, he declined to second a motion to reappoint her as court clerk, and her appointment thus naturally ended.

Accordingly, *Sims*, *Jett*, and similar out-of-circuit cases did not clearly establish "the violative nature of [Hopkins's] *particular* conduct." *Mullenix*, 577 U.S. at 12 (quoting *al-Kidd*, 563 U.S. at 742). They would not have let Hopkins "know[] that he was violating the plaintiff's constitutional rights" when he refused to second the reappointment motion. *See Culbertson v. Lykos*, 790 F.3d 608, 627 (5th Cir. 2015) (citation and quotation marks omitted). Atkins's response brief doesn't point to a case suggesting otherwise.

\* \* \*

Because Hopkins's violation, if any, of Atkins's First Amendment rights was not clearly established, the order denying summary judgment is REVERSED, and this matter is REMANDED. We make no indication of what proceedings or decisions there should be on remand.

---

[1] Citing, *e.g.*, *Maestas v. Segura*, 416 F.3d 1182, 1191 (10th Cir. 2005) (defendant's "personnel *recommendation*" might make him "liable if he possessed a retaliatory motive which set in motion the events that ultimately led to Plaintiffs' transfers"); *Tejada-Batista v. Morales*, 424 F.3d 97, 102 (1st Cir. 2005) (plaintiff "would not have been fired if appellants had not *disclosed* [his] prior conviction and passed along the *recommendation*"); *Darnell v. Ford*, 903 F.2d 556, 561–62 (8th Cir. 1990) (defendant can be liable for *recommending* discipline).