Terrance Patrick ESFELLER,
Plaintiff–Appellant

v.

Sean O'KEEFE, In his official capacity as the Chancellor of Louisiana State University, Baton Rouge, Defendants–Appellees.

No. 09–30611.

United States Court of Appeals,
Fifth Circuit.

Aug. 3, 2010.

---

Donald Carl Hodge, Jr., Baton Rouge, LA, for Plaintiff-Appellant.

Harry Alston Johnson, III, Taylor Stephen Carroll, Alexander John Mijalis, Phelps Dunbar, L.L.P., Baton Rouge, LA, for Defendants-Appellees.

Before KING and GARZA, Circuit Judges.[*]

PER CURIAM: [**]

This is an appeal from the district court's denial of a preliminary injunction. Appellant Terrance Patrick Esfeller sought preliminary and permanent injunctive relief, enjoining the enforcement of the Louisiana State University ("LSU" or the "University") Code of Conduct (the "Code").

I

In 2006, Esfeller, at the time an LSU student, was charged by the LSU Office of Judicial Affairs with four non-academic misconduct violations:

(1) extreme, outrageous or persistent acts, or communications that are intended or reasonably likely to harass, intimidate, harm, or humiliate another;

(2) committing an act or attempting to commit an act on campus that would be in violation of city, parish, state, or federal law;

(3) attempting to commit or assisting with the commission or attempted commission of any of the foregoing listed offenses; and

(4) violating any rule and/or regulation of the University, including, but not limited to, administrative rules of campus offices.

The charges arose from a dispute between Esfeller and his former girlfriend, who filed a complaint with LSU campus police. Esfeller allegedly persistently harassed and threatened his ex-girlfriend through email and social networking sites, such as MySpace and Facebook, and physically confronted her. She asked Esfeller to stop but Esfeller persisted. After her complaint, the LSU police prepared a report detailing the incidents; however, Esfeller's ex-girlfriend decided not to press charges. Esfeller was served with notice of the violations, which apparently spurred him to escalate the harassment by threatening to begin his own investigation into her conduct, threatening her scholarship status, and threatening her reputation. Esfeller also threatened to post unflattering emails about her and to contact the father of her child to incite a custody battle.

Esfeller met with a dean regarding the charged violations. The dean conducted an investigation and found Esfeller to be in violation of the Code. Esfeller was offered

---

[*] This matter is being decided by a quorum. 28 U.S.C. § 46(d).

a one-year disciplinary probation term and enrollment in an anger management course. He rejected the proposed sanctions and requested a second investigation into the matter. A second dean investigated; she, too, found Esfeller in violation of the Code and offered the same sanctions. Esfeller again rejected the sanctions and told the dean that he was aware that another student with similar violations was given a disciplinary warning for one semester. The second dean offered to match that sanction, along with completion of an anger management court. Esfeller again rejected the sanctions and asked for a panel hearing.

Between April and July 2007, LSU repeatedly tried to schedule a panel hearing but had to reschedule a number of times due to Esfeller's schedule, the availability of the complaining witness, and the availability of panel members. The hearing was finally scheduled for July 27, 2007 and three notices were sent to Esfeller, in which he was informed that he would be able to present witnesses and documentary evidence. At the close of business the evening before the hearing, Esfeller informed LSU that he would not be able to attend because of work obligations. LSU proceeded with the hearing, and although Esfeller was absent and his attorney was not permitted to participate in or observe the hearing, the panel heard from Esfeller's designated witnesses and reviewed documentary evidence that he submitted. The panel unanimously found Esfeller in violation of the Code. Esfeller appealed the panel's decision to LSU's Vice Chancellor who denied the appeal. Esfeller then sought review by LSU's then-Chancellor Sean O'Keefe, who denied the appeal.

Esfeller filed suit in the district court against O'Keefe, in his official capacity, and LSU's Board of Supervisors (the "Board"), alleging violations of 42 U.S.C. §§ 1983 and 1988, the First, Fifth, Sixth, and Fourteenth Amendments of the Constitution, and the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g.[1] Esfeller alleged that the LSU Code is facially and as-applied overbroad and vague. He also asserted that LSU deprived him of procedural due process in violation of the Fourteenth Amendment by failing to provide sufficient notice and an opportunity to be heard in the disciplinary proceeding. He sought preliminary and permanent injunctive relief invalidating and restraining enforcement of the Code and "enjoining defendants from enforcing the disciplinary punishment levied against [him]" by the University hearing panel. The district court denied preliminary injunctive relief, finding that Esfeller was unlikely to succeed on the merits of either claim.

**II**

■ We briefly address whether Esfeller meets the requirements for Article III jurisdiction. *Tex. Office of Pub. Util. Counsel v. FCC*, 183 F.3d 393, 413 n. 16 (5th Cir.1999). He is no longer a student at LSU, having been expelled because of a low grade-point average. Further, he has no plans to return to LSU. Mootness goes to the heart of the court's Article III jurisdiction. A case becomes moot if: "(1) there is no reasonable expectation that the

---

1. The district court granted the Board's motion to dismiss all claims against it. Esfeller does not appeal that dismissal. The district court also dismissed all monetary claims against O'Keefe, and all claims based on violations of the Fifth and Sixth Amendments and FERPA. Accordingly, the only remaining claims are for injunctive relief, attorneys' fees and costs against O'Keefe in his official capacity, stemming from alleged violations of the First and Fourteenth Amendments.

alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* at 413–14. Standing alone, Esfeller's request for injunctive relief invalidating the offending Code provision is moot. Where a student is no longer enrolled in the school whose policies he is challenging, there is no case or controversy sufficient to support prospective injunctive relief. *See Ward v. Santa Fe Indep. Sch. Dist.,* 393 F.3d 599, 606 (5th Cir.2004); *Hole v. Tex. A & M Univ.,* No. 04–CV–175, 2009 U.S. Dist. LEXIS 123291, at *20 (S.D.Tex. Feb. 10, 2009). Here, however, Esfeller received a disciplinary sanction, reflected on his academic record and he seeks to prevent the University from enforcing that punishment. Thus, there are collateral or future consequences sufficient to satisfy the case or controversy requirement. *Cf. Kennedy v. MindPrint (In re ProEducation Int'l, Inc.),* 587 F.3d 296, 299 n. 1 (5th Cir.2009) (holding that injury to attorney's reputation stemming from disqualification order sufficed to confer Article III jurisdiction for appeal); *see also Sullivan v. Houston Indep. Sch. Dist.,* 307 F.Supp. 1328, 1338 (S.D.Tex.1969). Although, absent the blemish on his academic record, Esfeller would not have a live controversy or standing to challenge the validity of the Code now that he is no longer subject to it, the sanction is an actual, concrete injury sufficient to satisfy Article III. *See Fairchild v. Liberty Indep. Sch. Dist.,* 597 F.3d 747, 754 (5th Cir.2010). Thus, he can seek to invalidate the Code provisions and enjoin their application because, if successful, Esfeller will no longer be subject to the disci-

plinary sanction, which would be removed from his record.

## III

This court reviews the denial of a preliminary injunction for abuse of discretion. *Affiliated Prof'l Home Health Care Agency v. Shalala,* 164 F.3d 282, 284 (5th Cir. 1999) (per curiam). The district court's findings of fact are reviewed for clear error, while conclusions of law are reviewed de novo. *Id.* at 284–85. A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries a burden of persuasion." *Black Fire Fighters Ass'n v. City of Dallas,* 905 F.2d 63, 65 (5th Cir.1990) (per curiam). A preliminary injunction will issue if the movant establishes: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Concerned Women for Am. Inc. v. Lafayette Cnty.,* 883 F.2d 32, 34 (5th Cir.1989).

## IV

Esfeller's overbreadth challenge attacks a single provision of the Code, prohibiting "extreme, outrageous or persistent acts, or communications that are intended or reasonably likely to harass, intimidate, harm, or humiliate another."

■ Esfeller argues that the Code provision is facially unconstitutional.[2] A "fa-

---

2. Although Esfeller nominally asserts an as-applied challenge, he wholly fails to identify the conduct or speech that he contends is protected, let alone argue how the Code impinged on *his* rights. Accordingly, Esfeller

has waived any argument that the Code is unconstitutional as applied to him. *See, e.g., Hersh v. United States ex rel. Mukasey,* 553 F.3d 743, 762 n. 21 (5th Cir.2008).

cial challenge to a [regulation] is ... the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [regulation] would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). We first consider "whether the [provision] reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail." *Fairchild*, 597 F.3d at 755. The party challenging the statute must demonstrate "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the [c]ourt before a statute will be struck down as facially overbroad." *Hersh*, 553 F.3d at 762 (internal quotation marks omitted).

"A school need not tolerate student speech that is inconsistent with its 'basic educational mission,' even though the government could not censor similar speech outside the school." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988) (quoting *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 685, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986)). The highest level of scrutiny—applied to school regulations that are viewpoint-specific—requires the school to show that the expression would "substantially interfere with the work of the school or impinge upon the rights of other students." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 509, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Thus, for Esfeller's facial challenge to succeed, the overbreadth must be "substantial in relation to the [provision's] legitimate reach." *Hersh*, 553 F.3d at 762.

■ Esfeller relies heavily on the Third Circuit's decision in *Saxe v. State College Area School District*, 240 F.3d 200, 209 (3d Cir.2001). Although the Code provision at issue here is similar to the code found to be overbroad in *Saxe*, we find the provisions sufficiently distinguishable to conclude that Esfeller is unlikely to be able to show that the Code provision is unconstitutionally overbroad. Unlike the code at issue in *Saxe*, LSU's Code is not explicitly viewpoint-based: it does not prohibit hostile, disruptive, or offensive speech or conduct based on "race, religion, color, national origin, gender, sexual orientation, disability, or other personal characteristics," *see id.* at 202, which, even if highly offensive, may very well be at the core of protected speech. Second, although the LSU Code, like the *Saxe* code aims at speech or conduct that creates an intimidating, hostile, or offensive environment, the LSU Code requires that the expression be persistent, extreme or outrageous and "reasonably likely" to cause harassment or intimidation. Such a limitation excludes from the Code's sweep speech or conduct that is merely offensive to someone. *See Saxe*, 240 F.3d at 217. These limitations direct the Code at speech that "intrudes upon ... the rights of other students" and is legitimately subject to regulation under *Tinker*.

Similarly, Esfeller cannot show that the provision is "impermissibly vague in all of its applications." *Fairchild*, 597 F.3d at 756. In the school regulation context, this court has held that proscriptions need not be as precise as would be required in the criminal context. *See Murray v. W. Baton Rouge Parish Sch. Bd.*, 472 F.2d 438, 442 (5th Cir.1973). This court found a criminal statute prohibiting certain acts that "intimidate," "harass," "coerce," and "threaten" not to be unconstitutionally vague. *See CISPES (Comm. in Solidarity with People of El Salvador) v. FBI*, 770 F.2d 468, 475–76 (5th Cir.1985); *see also United States v. Cassel*, 408 F.3d 622, 635 (9th Cir.2005) (finding, in the criminal context, that the term "intimidate" was not uncon-

stitutionally vague where the statute limited the word by specifying the context in which the intimidation must occur and the effect it must have); *United States v. Bowker*, 372 F.3d 365, 383 (6th Cir.2004), *vacated on other grounds*, 543 U.S. 1182, 125 S.Ct. 1420, 161 L.Ed.2d 181 (2005) (finding, in the criminal context, that the words "threaten" and "harass" have generally accepted meanings that can be easily ascertained). Given the wider latitude in the context of school regulations than the criminal context, the district court did not abuse its discretion in determining that Esfeller was unlikely to succeed in showing unconstitutional vagueness.

## V

Esfeller challenges the disciplinary proceedings as violating due process because he did not receive sufficient notice of the charges or an opportunity to be heard at the disciplinary hearing.

A student subject to school disciplinary proceedings is entitled to some procedural due process. *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The student must be given notice of the charges against him, an explanation of what evidence exists against him, and "an opportunity to present his side of the story." *Id.* at 581, 95 S.Ct. 729. The student is not entitled to the "opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident." *Id.* at 583, 95 S.Ct. 729.

Regarding his claim that he did not receive sufficient notice of the charges, Esfeller did, in fact, receive written notice of the charges against him, including citation to the precise provisions of the LSU Code that he was charged with violating. He was apprised of the charges, in person, on at least two occasions when he met with LSU officials. He was given access to the

Office of Judicial Affairs' file regarding the charges. Accordingly, Esfeller would be highly unlikely to succeed on the merits of showing a lack of notice sufficient to violate due process.

■ Esfeller's claim that he was not given an opportunity to be heard is slightly more troubling. Esfeller informed LSU that he could not be present at the panel disciplinary hearing due to work obligations. LSU nonetheless held the hearing in Esfeller's absence and barred his attorney from observing or participating in the hearing. Although Esfeller argues that he was not given an opportunity to be heard, the fact is that he was heard on a number of occasions by different LSU officials. LSU spent nearly four months trying to schedule the hearing and finally selected a date in July 2007, during the summer break, when all witnesses would be available as well as panel members. Esfeller was provided three separate notices of the hearing date and time but failed to tell LSU until the close of business the day before the hearing that he could not attend. And, although Esfeller did not attend the panel hearing, he was heard on two subsequent occasions by officials with the power to overturn the panel ruling. *See Sullivan v. Houston Indep. Sch. Dist.*, 475 F.2d 1071, 1077 (5th Cir.1973) (noting the well-settled principle that a procedural defect in an initial hearing can be cured by subsequent hearings).

As LSU points out, it is not clear that Esfeller was even required to be given the opportunity to be heard at the panel hearing. *Goss* requires "at least" an "opportunity to characterize [the] conduct and put it in ... the proper context." *Goss*, 419 U.S. at 584, 95 S.Ct. 729. Esfeller does not dispute that he received at least that much process. Esfeller was not entitled to have counsel present, to cross-examine witnesses, or even to call his own wit-

nesses. *Id.* at 583, 95 S.Ct. 729. Nonetheless, the panel heard from witnesses designated by Esfeller and considered the documentary evidence that he submitted. These facts, coupled with the multiple other opportunities in which Esfeller exercised his right to be heard, support the district court's determination that Esfeller was unlikely to succeed on the merits of showing a due process violation. Accordingly we find no abuse of discretion.

## VI

For the foregoing reasons, we AFFIRM the district court's order denying preliminary injunctive relief.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under