# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 22, 2019

Lyle W. Cayce
Clerk

No. 18-30148

TERESA BUCHANAN,

Plaintiff - Appellant

v.

F. KING ALEXANDER; DAMON ANDREW; A. G. MONACO; GASTON REINOSO,

Defendants - Appellees

Appeal from the United States District Court
for the Middle District of Louisiana

Before WIENER, SOUTHWICK, and COSTA, Circuit Judges.

WIENER, Circuit Judge

Plaintiff-Appellant Dr. Teresa Buchanan ("Dr. Buchanan") was fired from her tenured professorship by the Board of Supervisors ("the Board") of Louisiana State University and Agricultural and Mechanical College ("LSU") in June 2015. In January 2016, Dr. Buchanan filed the instant lawsuit against (1) F. King Alexander ("President Alexander"), President and Chancellor of LSU; (2) Damon Andrew ("Dean Andrew"), Dean of the College of Human Sciences and Education at LSU; (3) A.G. Monaco ("Vice Chancellor Monaco"), Vice Chancellor of the Office Human Resource Management at LSU; and (4) Gaston Reinoso ("Director Reinoso"), Director of the Office of Human Resource

No. 18-30148

Management and Executive Director of Equal Employment Opportunities at LSU (collectively "Defendants"). Dr. Buchanan alleged (a) that Defendants violated her First and Fourteenth Amendment right to free speech and academic freedom (the "as-applied challenge"), (b) that Defendants violated her Fourteenth Amendment procedural and substantive due process rights, and (c) a facial challenge to LSU's sexual harassment policies (the "facial challenge"). Dr. Buchanan sought reinstatement and declaratory and injunctive relief. On cross-motions for summary judgment, the district court granted Defendants' motion and dismissed Dr. Buchanan's claims. Dr. Buchanan now appeals that decision.

## I.　FACTS AND PROCEEDINGS

### A. Factual Background

Before she was fired, Dr. Buchanan was an associate professor at LSU with tenure. She taught in the Early Childhood Program for teacher education. In November 2013, LSU received a complaint from the superintendent of a local public school district regarding Dr. Buchanan's "professionalism and her behavior" when she visited schools in his district. LSU also received complaints from some of Dr. Buchanan's students regarding her classroom behavior. One student complained about Dr. Buchanan's comments regarding the student's sexual relationship with her fiancé.[1] Another student complained that Dr. Buchanan recorded her crying during an assessment team meeting.[2] LSU had received a letter in 2012 from a group of students complaining that Dr.

---

[1] "According to Student 1: 'Dr. Buchanan had offered them condoms, had told them it was unacceptable to become pregnant. And that if you chose to become a mother, that your grades would suffer for that. She told them . . . enjoy the sex while the sex is – good. If you're dating – if you're dating, make sure the sex is good, something along those lines.'" Dr. Buchanan further told the student that her fiancé was "supportive now while the sex is good, but just wait until you're married five years."

[2] This student claimed that Dr. Buchanan was aggressive during the meeting and yelled at her. The student stated that she felt attacked.

No. 18-30148

Buchanan made offensive classroom comments, such as (1) "a woman is thought to be a dike if she wears brown pants"; (2) "it was a choice to be in the program and it was not the fault or problem of the professors if any of us chose to be mommies or wives and not to expect to get an A in the class"; and (3) use of "extreme profanity on a regular basis."

These complaints were reported to Associate Dean Jennifer Curry ("Dean Curry") who discussed them with Dr. Earl Cheek ("Dr. Cheek"), Director of the College of Education. After learning of these incidents, Dean Andrew directed Dean Curry to gather the complaints; he then consulted with Human Resources.[3] In December 2013, Dean Andrew told Dr. Buchanan that she would be removed from the classroom during a human resources investigation. Director Reinoso investigated to determine whether Dr. Buchanan had violated LSU policies, interviewed witnesses, and wrote a report. Dean Andrew reviewed Director Reinoso's report and recommended appointment of a Faculty Senate Grievance Committee ("Faculty Committee") under LSU's Policy Statement-104 for Dismissal for Cause of Faculty. In January 2014, Dr. Buchanan met with Director Reinoso and other human resources managers to discuss the complaints.

In May 2014, Director Reinoso sent a memorandum to Dr. Buchanan which stated that he found her "actions and behavior . . . inappropriate, unwelcome, and a direct violation of the University's Policy Statements on Sexual Harassment, PS-73 and PS-95" and her "reported communication style with students, faculty, and outside administrators . . . to be inappropriate." In June 2014, Dean Andrew met with Dr. Buchanan to discuss Director Reinoso's report, and they subsequently communicated about the report in writing. In

---

[3] While gathering the complaints, Dean Curry was informed that Dr. Buchanan "was no longer authorized to be on any Iberville Parish school campus."

No. 18-30148

July 2014, Dean Andrew recommended to Provost Stuart Bell that Dr. Buchanan be dismissed for cause. Provost Bell then requested and impaneled a Faculty Committee.

In March 2015, the Faculty Committee held a lengthy hearing regarding Dr. Buchanan's classroom behavior. The Faculty Committee concluded that Dr. Buchanan had violated LSU's sexual harassment policies, PS-73 and PS-95, "through her use of profanity, poorly worded jokes, and sometimes sexually explicit 'jokes.'" The Committee also found that Dr. Buchanan had created a "hostile learning environment." The Committee recommended censure.

In April 2015, despite the Faculty Committee's censure recommendation, President Alexander informed Dr. Buchanan that he was going to recommend to the Board that she be dismissed for cause and violations of LSU's policies and the Americans with Disabilities Act ("ADA").[4] Dr. Buchanan appealed this recommendation and addressed the Board. The Board fired Dr. Buchanan in June 2015.

B. Procedural Background

Dr. Buchanan filed this lawsuit after she was fired. The parties filed cross-motions for summary judgment. The district court denied Dr. Buchanan's motion and granted Defendants' motion, holding that: (1) for purposes of these Defendants' qualified immunity, liability for retaliation in violation of the First Amendment based on a defendant's merely causing an adverse employment action was not clearly established, (2) there was no evidence of a violation of Dr. Buchanan's First Amendment right to academic freedom, (3) LSU's sexual harassment policies were not *facially* overbroad, (4) LSU's sexual harassment policies *as applied* to Dr. Buchanan did not violate

---

[4] The Faculty Committee also investigated whether Dr. Buchanan violated the ADA by revealing a student's medical information to other students. The Committee found insufficient evidence to establish an ADA violation.

No. 18-30148

her First Amendment rights, and (5) Defendants did not violate Dr. Buchanan's right to procedural due process.[5] Dr. Buchanan now appeals the district court's denial of her facial and as-applied challenges to LSU's sexual harassment policies and the district court's holdings that Defendants are not personally liable.

## II.     LAW AND ANALYSIS

### A. As-Applied Challenge

When a litigant brings both as-applied and facial challenges, we generally decide the as-applied challenge first because it is the narrower consideration.[6] The Fifth Circuit reviews summary judgments *de novo*[7] and cases raising First Amendment issues by examining the whole record.[8]

The Supreme Court has established that academic freedom is "a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom."[9] Accordingly, "classroom discussion is protected activity."[10] However, even this protection has limits: Students, teachers, and professors are not permitted to say anything and everything simply because the words are uttered in the classroom context.[11]

---

[5] *Buchanan v. Alexander*, 284 F. Supp. 3d 792 (M.D. La. 2018).

[6] *Serafine v. Branaman*, 810 F.3d 354, 362 (5th Cir. 2016).

[7] *MacLachlan v. ExxonMobil Corp.*, 350 F.3d 472, 478 (5th Cir. 2003), *abrogated on other grounds by Crowell v. Shell Oil Co.*, 541 F.3d 295 (5th Cir. 2008).

[8] *Denton v. Morgan*, 136 F.3d 1038, 1042–43 (5th Cir. 1998).

[9] *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967).

[10] *Kingsville Indep. Sch. Dist. v. Cooper*, 611 F.2d 1109, 1113 (5th Cir. 1980).

[11] *See, e.g.*, *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986) (holding that student could not claim First Amendment protection for offensively lewd and indecent speech); *Martin v. Parrish*, 805 F.2d 583 (5th Cir. 1986) (holding that professor had no First Amendment right to use profane language in the classroom). In his book, *Democracy, Expertise, and Academic Freedom*, Robert C. Post, Yale Law Professor and former Dean of Yale Law School and general counsel for the AAUP, discusses the limits of First Amendment academic freedom. He notes that the value of academic freedom depends on universities holding professors to professional standards in contrast with the traditional First Amendment value of the free marketplace of ideas. Therefore, "[t]he right question for courts to ask about academic freedom is how to fashion doctrine that best protects the 'freedom of

No. 18-30148

Public university professors are public employees. To establish a § 1983 claim for violation of the First Amendment right to free speech, they must show that (1) they were disciplined or fired for speech that is a matter of public concern, and (2) their interest in the speech outweighed the university's interest in regulating the speech.[12] The first question, asking whether the professor's speech is protected as a matter of public concern, is a question of law.[13]

> The inquiry into whether Plaintiff's interests in speaking outweigh the College's interests in regulating Plaintiff's speech is a factual determination conducted under the well known *Pickering*[-*Connick*] balancing test. . . . If Plaintiff's interests in the prohibited speech outweigh the College's interests, then Plaintiff's First Amendment rights have been violated. . . . If the First Amendment violation was a substantial or motivating factor in Defendants' disciplinary action against Plaintiff, Defendants may present evidence that they would have disciplined Plaintiff in the absence of his protected conduct. . . . However, if Plaintiff's speech does not involve a matter of public concern, it is unnecessary for the court to scrutinize the reason for the discipline.[14]

If Dr. Buchanan did not speak as a citizen on a matter of public concern, then she has no First Amendment claim for LSU's response to her speech.[15] "[W]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed

---

thought, of inquiry . . . of the academic profession.'" Robert C. Post, *Democracy, Expertise, and Academic Freedom: A First Amendment Jurisprudence for the Modern State* 67, 80 (2012) (quoting the *1915 Declaration of Principles on Academic Freedom and Academic Tenure* reprinted in American Association of University Professors, Policy Documents and Reports 291-301 (9th ed. 2001)).

[12] *See Connick v. Myers*, 461 U.S. 138, 147–50 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *Martin*, 805 F.2d at 584.

[13] *Connick*, 461 U.S. at 148 n.7; *Tompkins v. Vickers*, 26 F.3d 603, 606 (5th Cir. 1994).

[14] *Bonnell v. Lorenzo*, 241 F.3d 800, 810 (6th Cir. 2001) (citing *Pickering*, 391 U.S. at 568; *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1186 (6th Cir. 1995); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285 (1977); *Connick*, 461 U.S. at 146).

[15] *See Connick*, 461 U.S. at 147–48.

by the whole record."[16] "Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community."[17] When a public employee speaks in his capacity as an employee and on personal matters, rather than in his capacity as a citizen on a matter of public interest, his speech falls outside the protection of the First Amendment.[18] A mere element of personal concern, however, does not prevent finding that an employee's speech as a whole includes a matter of public concern.[19]

We agree with the district court here that Dr. Buchanan's use of profanity and discussion of her sex life and the sex lives of her students was not related to the subject matter or purpose of training Pre-K–Third grade teachers. This court has held that, in the college classroom context, speech that does not serve an academic purpose is not of public concern.[20] Dr. Buchanan would rely on the Ninth Circuit's holding in *Cohen v. San Bernardino Valley*

---

[16] *Id.* at 147–48.

[17] *Adams v. Trustees of the Univ. of N.C.–Wilmington*, 640 F.3d 550, 564 (4th Cir. 2011) (quoting *Kirby v. City of Elizabeth City*, 388 F.3d 440, 446 (4th Cir. 2004)) (citing *Connick*, 461 U.S. at 146).

[18] *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 366 (5th Cir. 2000), *abrogated on other grounds by Gibson v. Kilpatrick*, 838 F.3d 476 (5th Cir. 2016) (citing *Connick*, 461 U.S. at 147).

[19] *Id.* at 365.

[20] *Martin*, 805 F.2d at 585 (holding that a professor's use of profanity to castigate his students was not a matter of public concern because it served no academic purpose); *see also Bonnell*, 241 F.3d at 820 (holding that a professor "may have a constitutional right to use words such as 'pussy,' 'cunt,' and 'fuck,' but he does not have a constitutional right to use them in a classroom setting where they are not germane to the subject matter"); *Dambrot*, 55 F.3d at 1190 (holding that "[a]n instructor's choice of teaching methods does not rise to the level of protected expression"); *cf. Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 682 (6th Cir. 2001) (holding that a professor's right to use vulgarity and racial slurs during analysis of the historical use of oppressive and marginalizing language was protected speech); *Kerr v. Hurd*, 694 F. Supp. 2d 817, 842–43 (S.D. Ohio 2010) (holding that discussion and advocacy of a medical technique during classroom instruction was a matter of public concern because it was relevant to a national debate on best practices for delivering babies).

*College*[21] that a university's sexual harassment policy was "simply too vague as applied . . . [because the professor's] speech did not fall within the core region of sexual harassment as defined by the Policy."[22] Dr. Buchanan's speech is easily distinguished from Professor Cohen's speech. In *Cohen*, the use of profanity and discussion of controversial viewpoints was "at least tangentially related" to teaching college-level English.[23] Here, the use of profanity and discussion of professors' and students' sex lives were clearly not related to the training of Pre-K–Third grade teachers. Dr. Buchanan's speech was not, therefore, a matter of public concern; we thus affirm the district court's holding that LSU's policies did not violate the First Amendment as applied to Dr. Buchanan because her speech was not protected.

B. Facial Challenge

"Generally, we 'proceed to an overbreadth issue' only if 'it is determined that the statute would be valid as applied.'"[24] Here, because Dr. Buchanan's as-applied challenge fails, we proceed to consideration of the facial overbreadth challenge.

Dr. Buchanan sued the wrong parties. The proper defendants to a facial challenge are the parties responsible for creating or enforcing the challenged law or policy.[25] In *Jordahl v. Democratic Party of Virginia*, the Fourth Circuit held that the plaintiffs had failed to present a facial challenge.[26] Those

---

[21] 92 F.3d 968 (9th Cir. 1996) (discussing discipline of a college professor for his use of profanity, discussion of pornography, and assertion of other controversial viewpoints during class discussion in a college-level English class).

[22] *Id.* at 972 (reasoning that the vagueness of the policy did not provide notice to the professor that it would be applied to his "longstanding teaching style").

[23] *Buchanan*, 284 F. Supp. 3d at 834.

[24] *Serafine*, 810 F.3d at 362–63 (quoting *Bd. of Trs. v. Fox*, 492 U.S. 469, 484–85 (1989)).

[25] *See Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 199 n.6 (4th Cir. 1997) (reasoning that for a facial challenge to a state law, the proper party was the state rather than the party seeking an injunction under the law).

[26] *Id.* at 199.

plaintiffs had sued the Democratic Party of Virginia ("DPV") alleging a violation of their free speech rights after the DPV sought injunctions "forbidding the plaintiffs from distributing [voter] guides."[27] The appeals court reasoned that, even though the DPV was the direct actor seeking enforcement of state statutes  and an injunction against plaintiffs, it was not the proper party to a facial challenge.[28] Similarly, when professors or students challenge a university's policies, the proper defendant party is the university or university board.[29]

Here, Dr. Buchanan has sued only employees and officials with individual and limited roles in administration of LSU's polices, but with no ultimate authority to enforce them. She failed to sue the Board of Supervisors, which is responsible for the creation and enforcement of the policies.[30] The Board, therefore, is the only proper party defendant to a facial challenge to LSU's policies.[31] We therefore vacate the district court's ruling on the facial

---

[27] *Id.* at 194.

[28] *Id.* at 194, 199 n.6.

[29] *See e.g.*, *DeJohn v. Temple Univ.*, 537 F.3d 301 (3rd Cir. 2008) (deciding graduate student's facial challenge to university's sexual harassment policy brought against university); *Piggee v. Carl Sandburg Coll.*, 464 F.3d 667 (7th Cir. 2006) (deciding professor's challenge to college's sexual harassment policy brought against college); *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200 (3rd Cir. 2001) (deciding students' facial challenge to school district's anti-harassment policy brought against school district); *Dambrot*, 55 F.3d 1177 (deciding coach's challenge to university's harassment policy brought against university).

[30] The Louisiana Constitution grants the LSU Board of Supervisors the authority to "supervise and manage" the school. La. Const. art. VIII, § 7. The Board of Supervisors' Bylaws state that the President establishes administrative and educational policies subject to the direction and control of the Board. *Bylaws, Board of Supervisors, LSU*, LSU.edu (Dec. 12, 2018, 3:01 PM), https://lsu.edu/bos/docs/bylaws-adopted-2018-10-04.pdf. LSU PS-104 states that a recommendation to dismiss a tenured faculty member for cause requires confirmation by the Board.

[31] We distinguish this case from *Esfeller v. O'Keefe*, 391 F. App'x 337 (5th Cir. 2010) (unpublished). In *Esfeller*, a student brought a facial challenge to LSU's Student Code of Conduct. The student sued the LSU Board of Supervisors, and the district court dismissed the Board. On appeal his court held that the Code was not facially overbroad. There, the plaintiff student did not appeal dismissal of the Board, and, unlike the policy in this case, the university president had ultimate authority to enforce the Code.

challenge and dismiss that claim for Dr. Buchanan's has failure to sue the proper party.

C. Qualified Immunity

We need not address the district court's holding on qualified immunity because Dr. Buchanan's claims fail. We nevertheless affirm that all Defendants are entitled to qualified immunity on her damages claims.

The qualified immunity inquiry comprises two questions: (1) "whether the defendant violated the plaintiff's constitutional rights" and (2) whether that right was clearly established.[32] "We now have discretion to skip the first inquiry and resolve a case solely on clearly established grounds."[33] Before this court issued its 2018 opinion in *Sims v. City of Madisonville*, the law was unsettled whether a nondecisionmaker defendant who only recommended that a plaintiff be fired could be held liable for a § 1983 First Amendment claim[34]:

> Although [*Sims*] clarif[ied] that *Jett* controls . . . , it provides no recourse to [Buchanan]. That is because of the second part of the qualified immunity inquiry, which requires a plaintiff to show that any violation of rights was clearly established at the time the conduct occurred. When [Buchanan] was terminated in [June 2015] the inconsistency in our law on whether First Amendment liability can attach to a public official who did not make the final employment decision had not been resolved. . . . If judges have mixed up principles of . . . liability in this area and failed to recognize *Jett* as the controlling decision, [school] officials should not be expected to have a more nuanced understanding of section 1983 law.[35]

Although the district court did not discuss this unsettled matter of law in its reasoning on qualified immunity, its holding that Defendants' acts were

---

[32] *Sims v. City of Madisonville*, 894 F.3d 632, 638 (5th Cir. 2018).

[33] *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 240 (2009)).

[34] *Sims*, 894 F.3d at 638, 640; *Culbertson v. Lykos*, 790 F.3d 608, 627 (5th Cir. 2015).

[35] *Sims*, 894 F.3d at 641.

No. 18-30148

objectively reasonable considering clearly established law at the time was not error.

### III.    CONCLUSION

The district court correctly concluded that Dr. Buchanan's speech was not protected by the First Amendment. The district court's holding on the as-applied challenge is AFFIRMED. On the facial challenge, Dr. Buchanan has not sued the proper party. The district court's holding on the facial challenge is VACATED and Dr. Buchanan's claim is DISMISSED on this alternate ground.