# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 28, 2023

Lyle W. Cayce
Clerk

————————

No. 21-20577

————————

Jillian Ostrewich,

*Plaintiff—Appellant/Cross-Appellee*,

*versus*

Clifford Tatum, *in his official capacity as Harris County Elections Administrator*; Jane Nelson, *in her official capacity as Secretary of State of Texas*; John Scott, *in his official capacity as the Attorney General of Texas*,

*Defendants—Appellees/Cross-Appellants*,

Kim Ogg, *in her official capacity as Harris County District Attorney*,

*Defendant—Appellee*.

————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-715

————————————————————

Before Clement, Duncan, and Wilson, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

America's "early elections were not a very pleasant spectacle" for voters. *Burson v. Freeman*, 504 U.S. 191, 202 (1992) (plurality opinion) (quotation omitted). Indeed, in the nineteenth century, polling places were

often a place of bedlam:  "Sham battles were frequently engaged in to keep away elderly and timid voters," *id.* at 202, "[c]rowds would gather to heckle and harass voters who appeared to be supporting the other side," and "[e]lectioneering of all kinds was permitted," *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1882–83 (2018).  To facilitate more orderly voting, states came to institute a number of reforms, including restrictions on "election-day speech in the immediate vicinity of the polls."  *Id.* at 1883 (quotation omitted).  "Today, all 50 states and the District of Columbia have laws curbing various forms of speech in and around polling places on Election Day."  *Id.*

At issue in this case are three such Texas laws:  Texas Election Code sections 61.003, 61.010, and 85.036 (collectively, the "electioneering laws"). Jillian Ostrewich filed this action, alleging that she was unconstitutionally censored under the electioneering laws when she voted in 2018 and that the statutes unconstitutionally "chilled" her right to free speech by criminalizing political expression within polling places.  The district court, adopting the magistrate judge's report and recommendation, upheld section 61.010 as constitutional, but concluded that sections 61.003 and 85.036 are facially unconstitutional under the First Amendment.  Both sides appealed, contesting jurisdictional issues as well as the merits.  Following *Mansky*, we hold that all three electioneering laws pass constitutional muster.

## I.

## A.

Sections 61.003 and 85.036—which are near duplicates—prohibit "electioneering" near polling places.  Section 61.003 states, in relevant part:

> (a) A person commits [a misdemeanor] offense if, during the voting period and within 100 feet of an outside door through

2

No. 21-20577

which a voter may enter the building in which a polling place is located, the person:

> (1) loiters; or
>
> (2) electioneers for or against any candidate, measure, or political party.
>
> . . .
>
> (b) In this section:
>
> (1) "Electioneering" includes the posting, use, or distribution of political signs or literature.

TEX. ELEC. CODE § 61.003. Section 85.036 is substantively the same but applies during the early voting period instead of on Election Day itself. TEX. ELEC. CODE § 85.036. Section 61.010, entitled "Wearing Name Tag or Badge in Polling Place," complements the first two statutes, restricting what a person may wear in a polling place. Section 61.010 reads:

> (a) . . . [A] person may not wear a badge, insignia, emblem, or other similar communicative device relating to a candidate, measure, or political party appearing on the ballot, or to the conduct of the election, in the polling place or within 100 feet of any outside door through which a voter may enter the building in which the polling place is located.
>
> . . .
>
> (c) A person commits an offense if the person violates Subsection (a). An offense under this subsection is a Class C misdemeanor.

TEX. ELEC. CODE § 61.010.

## B.

Houston's 2018 election ballot included a proposition ("Prop B") to amend the City Charter to guarantee Houston's firefighters pay parity with the City's police officers. Prop B supporters actively campaigned for the

3

initiative, including through street demonstrations.  Many supporters wore distinctive yellow t-shirts that contained a union logo and the words "Houston Fire Fighters."  Prop B supporters also wore the shirts while advocating around polling locations.

Jillian Ostrewich, a self-proclaimed "fire wife," and her firefighter husband wore these shirts when they headed to the polls to vote during Houston's early voting period.  When Ostrewich reached the front of the voting line, an unidentified election worker pointed at her shirt and told her that "[y]ou are not going to be allowed to vote," because voters were "voting on that."  This was consistent with the policy established by the polling location's presiding judge, the official who manages polling locations in Texas.  *See* Tex. Elec. Code § 32.075(a).[1] For Ostrewich to be permitted to vote, the election worker instructed her to go to the restroom to turn her shirt inside-out.[2] Ostrewich complied, then returned to the line and voted. The next day, the Harris County Administrator of Elections advised election workers that only yellow firefighter t-shirts explicitly promoting Prop B needed to be covered up; union-logoed, yellow firefighter t-shirts—like the one Ostrewich had worn—were permissible.

After the election, Ostrewich filed suit, alleging that she was unconstitutionally censored and that Texas's electioneering laws unconstitutionally chilled her right to free speech.  She sued both local and

---

[1] Under section 32.075(a), the presiding judge "shall preserve order and prevent breaches of the peace and violations of this code in the polling place and in the area within which electioneering and loitering are prohibited . . . ." *See also* Tex. Elec. Code § 32.071 ("The presiding judge is in charge of and responsible for the management and conduct of the election at the polling place of the election precinct that the judge serves.").

[2] While the election worker was who instructed Ostrewich to change her shirt, the policy originated from the presiding judge.  Our analysis therefore refers to the presiding judge as the relevant actor.

state defendants in their official capacities, including the Texas Secretary of State, Texas Attorney General, Harris County Clerk, and Harris County Attorney, (collectively, the "State").[3] After discovery, both Ostrewich and the State moved for summary judgment. The case was assigned to a magistrate judge, who recommended rejecting the State's assertions that Ostrewich's claims were barred by sovereign immunity and, alternatively, that she lacked Article III standing. Addressing the merits, the magistrate judge recommended upholding section 61.010 as constitutional because it was sufficiently limited to apparel "relating to a candidate, measure, or political party appearing on the ballot," but concluded that sections 61.003 and 85.036 were facially unconstitutional under the First Amendment because they contained no such limiting language. The district court adopted the recommendation in full. Both sides timely appealed the ruling.

On appeal, Ostrewich asserts the district court erred in upholding section 61.010 as constitutional, both facially and as applied. The State disagrees, asserting that the district court should not have ruled on Ostrewich's constitutional claims because she lacks standing and the Eleventh Amendment bars her claims against Texas's Attorney General and Secretary of State. On the merits, the State contends all three sections pass constitutional muster.

---

[3] Various officeholders have changed during the pendency of this appeal. We have previously granted unopposed motions to substitute and refer to each officer using his or her official title for consistency.

We recognize that the defendants encompass both state and local government officials. However, because the defendants are represented by a single brief, we refer to them collectively as "the State" for simplicity.

## II.

We review a "district court's judgment on cross motions for summary judgment de novo, addressing each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *CANarchy Craft Brewery Collective, LLC v. Tex. Alcoholic Beverage Comm'n*, 37 F.4th 1069, 1074 (5th Cir. 2022) (quotation omitted). Summary judgment is appropriate if "the evidence shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *High v. E-Sys. Inc.*, 459 F.3d 573, 576 (5th Cir. 2006); Fed R. Civ. P. 56.

When interpreting Texas statutes, this court employs "the same methods of statutory interpretation used by the Texas Supreme Court." *Camacho v. Ford Motor Co.*, 993 F.3d 308, 311 (5th Cir. 2021). That court instructs that "text is the alpha and the omega of the interpretive process." *Id.* (quoting *BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017)).

## III.

Before addressing the merits, we must traverse a couple of threshold issues: the proper parties to this action, and Ostrewich's standing. Both implicate the court's jurisdiction to consider the case. We conclude that Texas's Attorney General and Secretary of State enjoy sovereign immunity, but that Ostrewich has standing to bring her claims against the remaining defendants.

No. 21-20577

## A.

The district court found that the *Ex parte Young*[4] exception to Eleventh Amendment sovereign immunity permitted Ostrewich to bring her claims against Texas's Attorney General and Secretary of State. This was incorrect; the exception only applies if the state officials have a sufficient connection with enforcing the electioneering laws. Per our precedent, they do not.

Eleventh Amendment sovereign immunity "prohibits suits against state officials or agencies that are effectively suits against a state." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). The *Young* exception to this rule "allows private parties to bring suits for injunctive or declaratory relief against individual state officials," but only if those officials have "some connection with the enforcement of the challenged act." *Id.* (cleaned up). To show this required "connection," a state officer must have a "particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 181 (5th Cir. 2020) (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). It is insufficient for a party to show only that a state officer has "a general duty to enforce the law." *Id.* In the *Young* context, "enforcement" means "compulsion or constraint." *Richardson v. Flores*, 28 F.4th 649, 655 (5th Cir. 2022) (quoting *City of Austin*, 943 F.3d at 1000); *see also Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022) ("If the official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation.").

We first address the Secretary of State. To overcome her sovereign immunity via *Young*, Ostrewich must show that the Secretary has "some

---

[4] 209 U.S. 123, 155–56 (1908).

7

connection with the enforcement" of the "specific election code provisions" at issue. *Richardson*, 28 F.4th at 653–54 (quotation and citation omitted). She may not rely simply on the Secretary's "broad duties to oversee administration of Texas's election laws." *Id.* at 654. The Secretary's "[o]ffering advice, guidance, or interpretive assistance" to local officials does not constitute enforcement. *Id.* at 655.

The district court concluded that the Secretary had a sufficient connection to the enforcement of Texas's electioneering laws because she is responsible for training presiding judges to enforce elections law, and she issues election advisories interpreting the electioneering laws, which guide presiding judges' discretionary decisions "under threat of removal." *See* Tex. Elec. Code § 32.111 ("The [S]ecretary of [S]tate shall adopt standards of training in election law and procedure[s] for presiding and alternate judges."). But the Secretary's training and advisory duties fall short of the showing required for her to face suit under *Young*.

In Texas, presiding judges are exclusively entrusted with enforcing the electioneering laws at polling locations. *See* Tex. Elec. Code § 32.075; *see also supra* n.1. Both parties agree that a presiding judge has absolute discretion in exercising that enforcement power. *See* § 32.075 ("[A] presiding judge has the power of a [state] district judge to enforce order and preserve the peace[.]"). The Secretary, thus, does not directly enforce the electioneering laws, but only provides interpretive guidance. And, because "[o]ffering advice, guidance, or interpretive assistance does not compel or constrain" presiding judges in fulfilling their duties, *Young* does not operate to strip the Secretary of her sovereign immunity. *See Richardson*, 28 F.4th at 655.

The same goes for the Attorney General. Ostrewich must show that he has a particular duty to enforce the electioneering laws and has

demonstrated willingness to do so. *See City of Austin*, 943 F.3d at 1000–02. The district court determined that Ostrewich met this burden because there was no evidence that "the Attorney General will not prosecute violators in the future." The court further determined that the Attorney General had two specific statutory duties that require him to enforce the electioneering laws: Texas Election Code sections 273.001 (triggering an obligatory investigation by local authorities upon receipt of two or more complaints and permitting the Secretary to refer a complaint to the Attorney General for criminal investigation), and 273.021(a) (permitting the Attorney General to prosecute election law offenses).

A recent opinion from the Texas Court of Criminal Appeals is dispositive of this question. In *State v. Stephens*, the Court of Criminal Appeals held that section 273.021(a) violated Texas's Constitution because the Attorney General has no independent authority to prosecute election-related criminal offenses. 663 S.W.3d 45, 47 (Tex. Crim. App. 2021), *reh'g denied*, 664 S.W.3d 293 (Tex. Crim. App. 2022). According to the Court of Criminal Appeals, section 273.021(a)'s plain language merely allows the Attorney General to "prosecute with the permission of the local prosecutor" but, critically, "[he] cannot initiate prosecution unilaterally." *Id.* at 55. Indeed, the section does not require the Attorney General to prosecute election law violations at all—rather, it uses the permissive term "may" instead of a mandatory term like "shall." *Id.* at 54–55. As such, "nothing in [the] statute 'requires' the Attorney General to prosecute election cases." *Id.* at 55. The Attorney General's power related to election laws is therefore limited—he does not have the ability to "compel or constrain local officials" to enforce the electioneering laws, nor can he bring his own proceedings to prosecute election-law violators. *Cf. City of Austin*, 943 F.3d at 1001 (finding application of *Young* warranted when the Attorney General prohibited

payments, set rates, and sent letters threatening formal enforcement actions).

This holds true irrespective of section 273.001. As with section 273.021(a), the Attorney General lacks the power to prosecute election-related criminal offenses directly under section 273.001. Instead, section 273.001 simply empowers the Attorney General to *investigate* criminal conduct upon a triggering event—namely, referral by the Secretary. Nothing in this section gives the Attorney General the ability to prosecute, as that power would come from section 273.021(a) if it did not contravene the Texas Constitution. Ultimately, as with the Secretary, the *Young* exception does not strip the Attorney General of his sovereign immunity. *Richardson*, 28 F.4th at 655. The district court erred in holding otherwise. Accordingly, we reverse the district court's holding regarding sovereign immunity and dismiss Ostrewich's claims against the Secretary of State and Attorney General for lack of jurisdiction.

**B.**

To have standing against the remaining two defendants, Ostrewich must (1) have suffered an injury in fact (2) that is fairly traceable to the challenged action of one of the remaining defendants and (3) that will likely be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Ostrewich alleges two injuries: First, an election worker—while enforcing the electioneering laws—unconstitutionally censored her speech by instructing her to turn her firefighter t-shirt inside-out; second, the electioneering laws unconstitutionally chilled her speech. The State argues neither injury is sufficient to confer standing, maintaining that the first is not traceable to a named defendant, and the second is not an injury-in-fact. We disagree; Ostrewich's allegation that Texas's electioneering laws unconstitutionally chilled her speech establishes standing.

In the pre-enforcement context, this court has repeatedly held that chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement. *E.g.*, *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330–31 (5th Cir. 2020) (collecting cases). A plaintiff sufficiently pleads such an injury when she "(1) has an 'intention to engage in a course of conduct arguably affected with a constitutional interest,' (2) [her] intended future conduct is 'arguably proscribed by the policy in question,' and (3) 'the threat of future enforcement of the challenged policies is substantial.'" *Id.* at 330 (cleaned up) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014)).

The State argues that Ostrewich fails to "show a threat of future enforcement" because she provides no evidence that she—or any Texas voter—has or will ever face a credible threat of prosecution for violating the electioneering laws. But the State's argument is refuted by *Speech First*, where we explained that for pre-enforcement challenges to newly enacted or "non-moribund" statutes restricting speech, this court "assume[s] a credible threat of prosecution in the absence of compelling contrary evidence." *Id.* at 335; *see also id.* at 331 ("It is not hard to sustain standing for a pre-enforcement challenge in the highly sensitive area of public regulations governing bedrock political speech.").[5] Ostrewich has standing because her

---

[5] The State tries to circumvent this analysis by arguing that *Speech First* is inapplicable because the electioneering laws are not new. Yet the State completely ignores that *Speech First* also applies to "non-moribund" statutes. 979 F.3d at 335. Moreover, the electioneering laws at issue are routinely invoked by Texas and enforced by election judges. *See, e.g.*, Election Advisory No. 2020-06, https://www.sos.state.tx.us/elections/laws/advisory2020-06.shtml.

Similarly, the State asserts that it presented "compelling contrary evidence" that Ostrewich does not face a threat of prosecution, as no voter has been prosecuted for violating the law for at least a decade. But "a lack of past enforcement does not alone doom a claim of standing"—more evidence is needed. *Speech First*, 979 F.3d at 336; *see also Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006) ("Controlling

No. 21-20577

"claim is that the [non-moribund] policy causes self-censorship among those who are subject to it, and [her] speech is arguably regulated by the policy[.]" *Id.* at 336–37.

## IV.

We now turn to the merits of Ostrewich's appeal. The First Amendment prohibits laws "abridging the freedom of speech." U.S. CONST. amend. I. Texas's electioneering laws, forbidding certain forms of electioneering and political apparel, plainly restrict a form of expression within the First Amendment's ambit. But such laws do not always run afoul of the First Amendment. Indeed, states are often faced "with [this] particularly difficult reconciliation: the accommodation of the right to engage in political discourse with the right to vote." *Mansky*, 138 S. Ct. at 1892 (quoting *Burson*, 504 U.S. at 198).

The Supreme Court has articulated a "reasonableness" test for dealing with such situations. In *Mansky*, a group of voters, like Ostrewich, challenged a Minnesota electioneering law that prohibited voters from wearing a "political badge, political button, or other political insignia . . . at or about the polling place." *Id.* at 1883. Recognizing that a polling place is a "nonpublic forum," as polling locations have not traditionally been "a forum for public communication[,]" the Court held that Minnesota could reasonably restrict speech—based on content—to further the state's interest "in maintaining a polling place free of distraction and disruption." *Id.* at 1885, 1891 (quotation omitted). Under this flexible standard, states are required only to draw a reasonable line that "articulate[s] some sensible basis for distinguishing what [speech] may come in from what must stay out." *Id.*

--------------------------------

precedent . . . establishes that a chilling of speech because of the mere existence of an allegedly vague or overbroad [law] can be sufficient injury to support standing.").

at 1888. States may entrust election workers, like Texas's presiding judges, with discretion to enforce these restrictions at the polls, so long as the law guides that discretion by "objective, workable standards." *Id.* at 1891.

Here, as in *Mansky*, the electioneering laws regulate conduct within polling places—which, as noted, are nonpublic forums. Tex. Elec. Code §§ 61.003 (limiting the restriction to "within 100 feet" of a polling place); 61.010(a) (similar); 85.036(a) (similar). The district court, heavily relying on *Mansky*, determined that section 61.010 is a constitutional restriction on speech because it is limited to specific political apparel "relating to a candidate, measure, or political party appearing on the ballot," but held sections 61.003 and 85.036 facially unconstitutional because they contain no such limiting principle.

On appeal, Ostrewich contends the district court erred in holding section 61.010 constitutional, and she challenges the constitutionality of all three sections. She contends the electioneering laws were unreasonably applied to her and that they are incapable of reasonable application because they are facially overbroad or vague. The State disagrees, arguing that all three sections pass constitutional muster, both facially and as applied. We agree with the State. We first address section 61.010, which the district court upheld, before turning to sections 61.003 and 85.036, which the court struck down. Last, we address Ostrewich's claim for nominal damages deriving from her alleged constitutional injuries.

## A.

Ostrewich contends that section 61.010 violates the First Amendment's Free Speech Clause, both facially and as applied to her

No. 21-20577

wearing the firefighter t-shirt.[6]  The district court rejected these arguments and, correctly, held the section constitutional.

**1.**

When a litigant brings both facial and as-applied challenges, we generally decide the as-applied challenge first because it is the narrower question. *Buchanan v. Alexander*, 919 F.3d 847, 852 (5th Cir. 2019). So we begin with Ostrewich's contention that the State's enforcement of section 61.010 violates the First Amendment as applied to her sporting her firefighter t-shirt at the polling location. We agree with the district court's conclusion that section 61.010 provided a reasonable and constitutional basis for restricting Ostrewich from doing so.

"Casting a vote . . . is a time for choosing, not campaigning. The State may reasonably decide that the interior of the polling place should reflect that

---

[6] Ostrewich also asserts that the district court erroneously interpreted section 61.010 to apply to Texas voters, rather than poll watchers. But her interpretation does not comport with the statute's unambiguous text: It prohibits, "except as provided by Subsection (b), a person" from wearing a "badge, insignia, emblem, or other similar communicative device." Subsection (b) exempts presiding judges, clerks, and peace officers, which shows that if the Texas Legislature wanted to exempt voters or otherwise limit section 61.010(a) only to poll workers, it knew how to do so. Moreover, other Texas election provisions—including section 61.003, which Ostrewich agrees applies to voters— use "person" without further defining the term.

Ostrewich further argues that the district court's interpretation renders section 61.010 superfluous because sections 61.003 and 85.036 already prohibit persons from electioneering at the polling place and include apparel restrictions. But the three laws can be read congruently. Sections 61.003 and 85.036 broadly prohibit electioneering for any candidate, measure, or political parties, while section 61.010 more narrowly prohibits expression relating to a candidate, measure or political party appearing on the ballot.

Finally, Ostrewich posits that section 61.010's prohibition does not apply to apparel. But the Supreme Court has previously held that laws prohibiting political badges, buttons, or other insignia apply to apparel. *Mansky*, 138 S. Ct. at 1883. As the State argues, "apparel," can certainly contain an "emblem" or "insignia."

distinction." *Mansky*, 138 S. Ct. at 1887. Thus, to prevent partisan discord, Texas may restrict voter apparel in a polling place during the voting period "as long as the regulation on speech is reasonable." *Id.* at 1885. The question is whether a presiding judge, by enforcing section 61.010, could reasonably restrict Ostrewich from wearing her firefighter t-shirt in order to maintain a polling place free of partisan influence.

The district court concluded that Ostrewich's firefighter t-shirt was synonymous with the campaign in favor of Prop B. Moreover, Ostrewich herself testified that she wore the shirt to the polls because she was excited to vote on the measure. From these facts, the district court concluded that Ostrewich's firefighter t-shirt related to a measure appearing on the ballot, so that the presiding judge permissibly censored her to further Texas's interest in ensuring a campaign-free polling place.

Ostrewich argues the district court erred because section 61.010 can only constitutionally proscribe "express advocacy." And wearing her generic firefighter t-shirt did not constitute express advocacy because it did not contain any explicit message supporting Prop B. But a shirt, even one lacking words, can constitute advocacy for a political issue. *See Tinker v. Des Moines Indep. Comm'y Sch. Dist.*, 393 U.S. 503, 504 (1969) (voters donning black armbands to express disapproval of Vietnam war). As explained by the district court, "the State's interest in preventing partisan discord at the voting booth 'may be thwarted by displays that do not raise significant concerns in other situations.'" Based on the undisputed evidence, the district court correctly concluded that Ostrewich's firefighter t-shirt expressed support for Prop B and the presiding judge properly had "clear authority" under section 61.010 to order Ostrewich to change her shirt. Ostrewich's as-applied challenge to section 61.010 fails.

No. 21-20577

**2.**

We move to her facial challenge. *See Buchanan*, 919 F.3d at 854 ("Generally, we proceed to an overbreadth issue only if it is determined that the statute would be valid as applied." (quotation omitted)). In the First Amendment context, litigants can challenge a statute "because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). Ostrewich lodges such a claim against section 61.010, asserting that the statute does not pass constitutional muster under *Mansky* and is overbroad or vague.

Ostrewich's theories for facial unconstitutionality collapse into each other—essentially, Ostrewich contends that section 61.010 flunks *Mansky*'s reasonableness standard because it does not provide "objective, workable standards" to guide presiding judges' discretion, rendering it overbroad or vague. According to her, because section 61.010 prohibits content "related to" ballot measures, the statute impermissibly relies on presiding judges' discernment of whether speech is sufficiently "related to" ballot issues. Without additional guidance, presiding judges are left to guess at what may "come in from what must stay out," *Mansky*, 138 S. Ct. at 1888, leading to inconsistent and haphazard enforcement. Section 61.010, in Ostrewich's telling, thus fails to provide a sufficient limiting construction, permitting presiding judges to censor arbitrarily any type of apparel they deem to be related to a candidate, measure, or political party on the ballot.

The State disagrees, asserting that the statute's "related to" proviso constitutes a workable standard. Rather than requiring presiding judges to retain a mental index of various political issues and positions, section 61.010's standard is clear and simple to apply: When a "candidate, measure,

16

or political party" is on the ballot, its "badge, insignia, [or] emblem" is prohibited.

"Clear and simple" may be a bit of an overstatement. The record offers many examples of Texas officials inconsistently applying section 61.010. Nonetheless, while there may be room for interpretation, "[p]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Mansky*, 138 S. Ct. at 1891 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)).

In *Mansky*, the Supreme Court was particularly concerned that Minnesota's law lacked *any* limiting principle. By Minnesota's own admission, its statute could apply to ban content promoting any "recognizable political view." *Id.* at 1890. In contrast, section 61.010 only prohibits Texans from wearing apparel related to a candidate, measure, or political party "appearing on the ballot," thereby remedying the *Mansky* Court's concerns about overbroad or vague electioneering restrictions. Indeed, this may explain why the Court explicitly referred to section 61.010 as a law that "proscribes displays (including apparel) in more lucid terms" than the Minnesota statute at issue in *Mansky*. *Id.* at 1891.

As the district court succinctly explained,

> [Section 61.010] targets people who have gathered at a government-designated spot at a government-designated time to perform a civic task—vote. Its restrictions extend no further . . . . By limiting its reach to issues appearing on the ballot, the Texas law provides fair notice of what is expected of people gathered in and around the polling place on election day and during early voting.

Section 61.010 draws the requisite line between permitted and prohibited content to meet *Mansky*'s "reasonableness requirement."

No. 21-20577

Ostrewich also argues section 61.010 is unconstitutional because the law undermines Texas's interest in ensuring a distraction-free polling place. According to her, section 61.010 counterintuitively fosters polling place distractions by requiring presiding judges to confront voters. But this belies the brash history of electioneering that led every state to adopt some sort of electioneering and secret ballot protections. *See Mansky*, 138 S. Ct. at 1883; *Burson*, 504 U.S. at 202. And even disregarding that history, states may properly "respond to potential deficiencies in the electoral process with foresight, rather than react reactively," as long as "the response is reasonable." *Munro v. Socialist Workers Party*, 479 U.S. 189, 195–96 (1986). We agree with the district court that section 61.010 is constitutional.

## B.

Ostrewich next challenges the facial constitutionality of sections 61.003 and 85.036. We agree with the State that the district court erred in holding the statutes unconstitutional because the court ignored their limiting language.[7] The statutes prohibit "electioneering," which is generally defined to include "political signs and literature." Tex. Elec. Code §§ 61.003, 85.036. The district court concluded that the word "political" is unmoored from any limiting language, thus allowing presiding judges broadly, and impermissibly, to ban voters from wearing "political apparel." As the State contends, however, the district court misconstrued the statutes.

_____

[7] The State also asserts that the district court did not need to address these constitutional claims once the court concluded that section 61.010 properly prohibited Ostrewich's firefighter t-shirt in the polling location. But this construes Ostrewich's claims too narrowly, as only related to her firefighter t-shirt. She asserts a broader claim, that all three statutes unconstitutionally chill her right to free expression at polling locations. She may assert such a pre-enforcement challenge as to sections 61.003 and 85.036 because these laws arguably restrain her from wearing expressive apparel unrelated to measures on the ballot. *See Speech First*, 979 F.3d at 336 (holding plaintiffs suffer an injury-in-fact when a censoring regulation chills speech).

Indeed, both sections state "a person may not electioneer for or against any candidate, measure, or political party." Tex. Elec. Code § 85.036; *see also* § 61.003 (same). The sections then define "electioneering" to include the "posting, use, or distribution of political signs or literature." When read together, these electioneering laws prohibit people from deploying political signs or literature "for or against any candidate, measure, or political party" "within 100 feet of . . . [a] building in which a polling place is located." *Id.* § 85.036. Thus, contrary to the district court's conclusion, sections 85.036 and 61.003 are in fact cabined by a limiting principle that meets *Mansky*'s standard. *See* 138 S. Ct. at 1888.

The district court also erred in holding that sections 61.003 and 85.036 lack an objective, workable standard. Unlike section 61.010, these two sections are not limited to candidates, measures, or political parties appearing "on the ballot." Without the "on the ballot" limitation, the district court reasoned, sections 61.003 and 85.036 leave presiding judges with impermissible discretion. But in *Mansky*, the Supreme Court endorsed, albeit in dicta, similar prohibitions on "items displaying the name of a political party, items displaying the name of a candidate, and items demonstrating 'support of or opposition to a ballot question'" as "clear enough." 138 S. Ct. at 1889. By contrast, the Minnesota law at issue there instructed election workers to restrict *any* political-issue or political-group content. The electioneering laws at issue in today's case are narrower— Texas's presiding judges are limited to excluding content that would constitute electioneering "for or against" candidates, measures, and political parties.

We reach this conclusion mindful that the standard for holding these sections facially unconstitutional is "daunting" and requires us to find that "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Voting for Am., Inc. v.*

*Steen*, 732 F.3d 382, 387 (5th Cir. 2013) (quotation omitted). The Supreme Court has never suggested that electioneering restrictions could only proscribe content related to issues appearing on the ballot, and the district court failed to explain how these two statutes would otherwise be unconstitutional in "a substantial number" of their applications. We certainly do not foresee that they would be. The district court therefore erred in holding sections 61.003 and 85.036 unconstitutional.

## C.

Based on our conclusion that all three electioneering laws pass constitutional muster, such that Texas elections workers had a constitutional basis for prohibiting Ostrewich from wearing her firefighter t-shirt at the polling place, her claim for nominal damages fails as a matter of law. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 n.\* (2021) ("Nominal damages go only to redressability and are unavailable where a plaintiff has failed to establish a past, completed injury."). We therefore affirm the district court's denial of nominal damages.

## V.

In sum: We REVERSE the district court's holding denying Texas's Secretary of State and Attorney General sovereign immunity under the Eleventh Amendment and DISMISS those defendants for lack of jurisdiction. We AFFIRM that Ostrewich has standing to bring her claims against the remaining two defendants. We also AFFIRM the district court's holding that section 61.010 is constitutional. However, we REVERSE and RENDER the district court's holding that sections 61.003 and 85.036 are unconstitutional and instead uphold all three electioneering laws. Finally, we AFFIRM the district court's denial of nominal damages.